STATE of Minnesota, Respondent,

v.

Mustafaa Naji FORT, Petitioner,
Appellant.

No. C2–01–1732.

Supreme Court of Minnesota.

May 1, 2003.

Leonardo Castro, Chief Public Defender, James A. Kamin, First Assistant Public Defender, Minneapolis, for appellant.

Mike Hatch, Attorney General, St. Paul, Amy Klobuchar, Hennepin County Attorney, Paul R. Scoggin, Assistant County Attorney, Minneapolis, for respondent.

Howard S. Carp, Minneapolis, Teresa J. Nelson, Minnesota Civil Liberties Union, St. Paul, for amicus curiae Minnesota Civil Liberties Union.

Robert M.A. Johnson, Anoka County Attorney, Marcy S. Crain, Assistant County Attorney, Anoka, John Kingrey, Executive Director, St. Paul, for amicus curiae Minnesota County Attorneys Association.

## OPINION

PAGE, Justice.

This case arises from appellant Mustafaa Naji Fort's appeal of a court of appeals' decision reversing an order to suppress cocaine found during a search of his person as part of a routine traffic stop. Fort was a passenger in the vehicle at the time of the traffic stop. In suppressing the cocaine found during the search, the district court held that "in the context of a routine traffic stop, where police do not have an articulable basis to seek consent to search a passenger and fail to inform the passenger of the right to refuse consent to search, a subsequent search violates Article I, Section 10 of the Minnesota Constitution." On appeal, the court of appeals reversed and remanded to the district court, holding that the district court failed to consider the totality of the circumstances as required by existing law. Exercising our independent authority to interpret our own state constitution, we conclude that in the absence of reasonable, articulable suspicion a consent-based search obtained by exploitation of a routine traffic stop that exceeds the scope of the stop's underlying justification is invalid. *Ascher v. Commissioner of Public Safety*, 519 N.W.2d 183, 185 (Minn.1994). We therefore reverse.

On March 17, 2001, at approximately 9:30 p.m., Fort, an 18–year–old, African-American male, was the passenger in a car stopped by two Minneapolis police officers for speeding and having a cracked windshield. The vehicle was stopped at the intersection of Broadway and Lyndale Avenues in north Minneapolis, a location the officers considered to be in a "high drug" area. At the time of the stop, the police officers were in a marked squad car with its emergency lights activated. These lights remained activated as the officers exited the vehicle and approached the stopped car.

One officer approached the driver's side of the vehicle to speak to the driver, while the other officer approached the passenger's side to speak to Fort. This officer, in full uniform, was holding a flashlight and wearing a gun, mace, radio, and handcuffs

on his belt. After determining that neither the driver nor Fort had a valid driver's license, the officers decided to tow the vehicle. The first officer escorted the driver to the squad car to speak with him. The second officer asked Fort to exit the vehicle, escorted Fort to the squad car, and began questioning him about drugs and weapons. Specifically, the officer asked Fort if there were any drugs or weapons in the vehicle. Fort replied, "No, sir." The officer then asked, "Do you have any drugs or weapons on you?" Fort again replied, "No, sir." Finally, the officer asked, "Would you mind if I searched you for drugs or weapons?" Fort answered, "No, sir." The officer did not inform Fort that he had a right to refuse the search request or that he was free to leave without being searched.

At the suppression hearing, the officer testified that before he began questioning Fort he noticed Fort was nervous and avoided eye contact. He further testified that he spoke to Fort in a normal tone of voice and intended to offer Fort a ride home, although he never informed Fort of his intent. In order to conduct the search, the officer had Fort place his hands on the squad car and then performed a pat-down. During the search, the officer felt and removed from one of Fort's pockets several small, hard lumps, which he suspected to be crack cocaine. Fort was subsequently arrested.

Fort was charged with fifth-degree felony possession of a controlled substance, in violation of Minn.Stat. § 152.025 (1998). He moved to suppress the cocaine found during the search on the basis that police officers may not justify a search based on consent during the course of a routine traffic stop unless there is a valid race-neutral reason to suspect wrongdoing. The district court granted Fort's motion, concluding that a search of a passenger in a vehicle conducted during the course of a routine traffic stop violates Article I, Section 10, of the Minnesota Constitution if the police officer (1) does not have an articulable basis to seek consent to search and (2) fails to inform the passenger of his right to refuse consent to search. On appeal, the court of appeals remanded, holding that existing law requires a totality-of-the-circumstances approach in analyzing consent-to-search cases. Fort petitioned this court for further review, which we granted.

Fort asks us to apply Article I, Section 10, of the Minnesota Constitution to require that a police officer have reasonable articulable suspicion to expand the scope of a routine traffic stop in order to investigate other matters unrelated to the reason for the stop and to request consent to search. The state responds by arguing that consent law should not be modified simply because a consent occurs in the context of a traffic stop, and that this case can be resolved without modifying state constitutional law. Moreover, the state maintains that Fort was not seized at the time of the consent inquiry, but that, at the very least, the case should be remanded to the district court for a factual determination on this issue. The state conceded in its brief and at oral argument that if Fort was seized at the time of the consent inquiry, then the seizure would be impermissible because the seizure went beyond the scope and duration of the traffic stop. *See State v. Blacksten*, 507 N.W.2d 842, 846 (Minn.1993) (stating "detention of the person stopped may not continue indefinitely but only as long as reasonably necessary to effectuate the purpose of the stop" (citing *United States v. Sharpe*, 470 U.S. 675, 686–88, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985))).

When reviewing a pretrial order on a motion to suppress evidence, this

court may independently review the facts and determine whether the district court erred in suppressing the evidence as a matter of law. *State v. Harris,* 590 N.W.2d 90, 98 (Minn.1999). Moreover, this court reviews de novo a district court's conclusions as to the application of a provision of the Minnesota Constitution. *See State v. Wicklund,* 589 N.W.2d 793, 797 (Minn.1999).

While the district court did not make specific findings with respect to whether Fort was seized at the time of the investigative questioning and consent inquiry, we can make that determination based on the record before us. Moreover, a fair reading of the district court's memorandum leads to the conclusion that the district court implicitly concluded that Fort had been seized and that the questions went beyond the scope of the initial stop.

■ Investigative stops are permitted if there is a particularized basis for suspecting criminal activity. *State v. George,* 557 N.W.2d 575, 578 (Minn.1997); *see also United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (stating that "the detaining officer must have a particularized and objective basis for suspecting the particular person stopped of criminal activity"). Here, the car was stopped for speeding and a cracked windshield, both of which are violations of traffic laws. Thus, there was a particularized reason for suspecting criminal activity and a basis for stopping the car for further investigation of that activity.

■ We next determine whether Fort was seized under Article I, Section 10, of the Minnesota Constitution and the Fourth Amendment of the United States Constitution at the time the officer questioned him regarding the presence of narcotics and weapons. The state suggests that Fort, as a passenger, was not the subject of the traffic offense and was free to leave. However, "[t]temporary detention of individuals during the stop of an automobile by the police" constitutes a seizure under the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). While the Supreme Court did not specifically address whether a vehicle's passengers are also considered seized during a traffic stop, the facts in *Whren* indicate that the vehicle was carrying passengers. *Id.* at 808, 116 S.Ct. 1769. Nevertheless, we need not decide whether a passenger in a stopped vehicle is also seized because, even if Fort was not seized as part of the stop, a person is seized if a reasonable person, under the circumstances, would not feel free to disregard the police questions or to terminate the encounter. *See State v. Cripps,* 533 N.W.2d 388, 391 (Minn.1995).

Here, Fort was a passenger in a vehicle that was stopped for a routine traffic violation. An officer in full uniform, including flashlight, gun, handcuffs, and mace, approached the passenger's side of the vehicle while the squad car lights continued to flash and asked Fort to exit the vehicle. The officer then escorted Fort to the squad car and proceeded to ask him a series of questions. The questions were particularly intrusive given that they were aimed at soliciting evidence of drugs and weapons. On the facts presented, we conclude that, because an objectively reasonable person would not feel free to disregard the police officer's questions or to terminate the encounter, Fort was seized.

■ While there is nothing in the record to suggest that the initial stop was improper, the scope and duration of a traffic stop investigation must be limited to the justification for the stop. *See State v. Wiegand,* 645 N.W.2d 125, 135 (Minn. 2002). In *Wiegand,* the defendants were stopped for a burned-out headlight, but the police conducted a search using a narcotics-detection dog in the absence of reasonable articulable suspicion of drug-related

activity. *Id.* at 128–29, 137. We reversed the defendants' convictions holding, among other things, that under Article I, Section 10, of the Minnesota Constitution any expansion of the scope or duration of a traffic stop must be justified by a reasonable articulable suspicion of other criminal activity. *Id.* at 135.

Here, the officer testified at the pretrial hearing that the location of the stop was in a "high drug" area. He further testified that he intended to offer Fort a ride home and therefore conducted the search for purposes of officer safety. However, the district court, in concluding that the officer had no articulable basis to justify the search request, found this intention was not credible because it was not communicated to Fort. Moreover, the officer never said he suspected any crime other than the traffic violations. The purpose of this traffic stop was simply to process violations for speeding and a cracked windshield and there was no reasonable articulable suspicion of any other crime. Investigation of the presence of narcotics and weapons had no connection to the purpose for the stop. We therefore conclude that the investigative questioning, consent inquiry, and subsequent search went beyond the scope of the traffic stop and was unsupported by any reasonable articulable suspicion.[1] Therefore, we reverse the court of appeals and reinstate the district court's suppression order.[2]

Reversed.

---

**1.** While the investigative questioning, consent inquiry, and subsequent search may also have extended the duration of the traffic stop beyond that necessary for the stop, the record is such that we cannot say so definitively. That determination, however, is not required for resolution of the issues before us.

---

**2.** We feel compelled to make clear here, as we did in *Wiegand,* that our holding should not be read as limiting in any way a search conducted pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), for purposes of officer safety. *See State v. Wiegand,* 645 N.W.2d 125, 136 (Minn.2002).