**STATE of Minnesota, Appellant,**

v.

**Wade Allen VOLKMAN, Respondent.**

No. A03–1123.

Court of Appeals of Minnesota.

March 2, 2004.

Mike Hatch, Attorney General, St. Paul; and Patrick J. Ciliberto, Scott County Attorney, Michael J. Groh, Assistant County Attorney, Shakopee, for appellant.

Bruce A. Olander, Jordan; and Dennis W. Strid, Dennis Strid & Associates, Minneapolis, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge, RANDALL, Judge, and CRIPPEN, Judge.*

## OPINION

KLAPHAKE, Judge.

The state appeals the district court's order suppressing evidence discovered during a consensual search of respondent Wade Allen Volkman's vehicle. The district court suppressed the evidence based on its interpretation of *State v. Fort,* 660 N.W.2d 415 (Minn.2003), rejecting the state's argument that the evidence was admissible because it inevitably would have been discovered during an inventory search of the vehicle.

Because the police officer here had a reasonable and articulable suspicion of criminal activity based on his observations during a lawful stop, we conclude that his request for consent to search respondent's vehicle did not impermissibly expand the scope of the stop. Further, we conclude that the district court failed to consider the appropriate standards for inventory searches and for admission of evidence that inevitably would have been discovered during a properly conducted inventory search. We therefore reverse the district court's suppression order and remand for further proceedings consistent with this opinion.

## FACTS

At about 7:50 a.m. on June 12, 2002, Scott County Deputy Sheriff John Kvasnicka was sent to investigate a report of a man passed out in a truck on Vergus Avenue in Scott County. Vergus Avenue is a narrow, winding, graveled road, with steep ditches on both sides; on one side, the ditch leads down to a lake.

Kvasnicka found respondent slumped over in the driver's seat with his head resting against the driver's side door. Kvasnicka woke respondent by tapping on the window and opened the door to see if he needed medical assistance. Kvasnicka observed that respondent was disoriented, his eyes were red and bloodshot, and he

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

was confused about where he was. Respondent stated that he did not need medical assistance, but Kvasnicka was concerned because respondent "seemed to be confused" and "it took him a long time to answer questions." Respondent claimed that he was tired and had pulled off the road to sleep at about 4:00 a.m., some four hours earlier. Kvasnicka asked respondent to get out of the truck and asked him for his name. Respondent gave the name of his brother, Adam Scott Volkman; although Kvasnicka had had prior contacts with both respondent and his brother, he did not know them well enough to tell them apart.

By this time, Kvasnicka

was under the impression that [respondent] was possibly under the influence of some type of controlled substance. I did not suspect alcohol. I could not smell any alcohol. At that point I was not going to let him drive just because of his state of confusion and that[ ] also raised my suspicion that there possibly [were] drugs inside of the vehicle.

Twenty minutes after being awakened, Kvasnicka testified that respondent still appeared "groggy." At this point, Kvasnicka decided that the truck would have to be towed, because respondent appeared unable to drive safely.

Kvasnicka asked respondent if he could search his truck, without telling respondent that he could refuse; respondent consented. Respondent was not handcuffed and was not under arrest, but Kvasnicka agreed that respondent was being "detained" as "[p]ossibly under the influence of drugs." A second deputy sheriff, Daryn Kral, searched the truck and discovered a white powder wrapped in a coffee filter, inside a leather pouch, hidden in a toolbox in the truck. Respondent was handcuffed and placed in the squad car.

Kral testified that respondent appeared "very tired and his eyes were not—I don't know how to say it but he just appeared very tired at the scene, very groggy." Kral agreed that he would not have been comfortable allowing respondent to drive, but probably would have let someone pick him up and drive the truck. Kral stated, however, that he deferred to Kvasnicka, because the incident occurred on Kvasnicka's side of the county. Kvasnicka proceeded to arrange for towing of respondent's truck. Prior to the tow, a third deputy sheriff correctly identified respondent as Wade Allen Volkman. Respondent had three outstanding warrants.

At the omnibus hearing, the state offered to introduce evidence of the Scott County Sheriff's inventory policy. The district court accepted the inventory policy, but opined that its relevancy was limited because "it's the sheriff's policy regarding an inventory search but he can have whatever policy he wants, it doesn't make it right. . . . And it would be sort of like me relying on the sheriff for legal advice as to when an inventory could be done or not."

On June 9, 2003, the district court issued its order suppressing the drug evidence, based on the recent decision of *State v. Fort*, 660 N.W.2d 415 (Minn.2003). The court concluded that Kvasnicka did not have a reasonable and articulable suspicion of criminal activity that would permit him to expand the scope of the traffic stop by asking for consent to search. In a footnote to the order, the district court stated that because respondent's arrest resulted from an unlawful search, the drug evidence must be suppressed, although it would have been discovered during an inventory search.

On July 11, 2003, the state asked the court to vacate its order of June 9, by finding that *Fort* did not have retroactive application. The district court denied the

state's motion on August 7, 2003. This appeal followed.

## ISSUES

1. Did the district court err by concluding that the deputy sheriffs had impermissibly expanded the scope of the investigatory stop by asking for consent to search respondent's truck?

2. Did the district court err in its interpretation of the law regarding inventory searches and the inevitable discovery of evidence?

## ANALYSIS

### 1. Standard of Review

■ The prosecuting attorney may appeal from a pretrial order if the district court's "alleged error, unless reversed, will have a critical impact on the outcome of the trial[.]" Minn. R.Crim. P. 28.04, subd. 2(2). The suppression of the drug evidence here meets the standard of critical impact. See State v. Holmes, 569 N.W.2d 181, 184 (Minn.1997) (stating dismissal of charge following suppression of "all the evidence" meets critical impact element). Where the facts are not in dispute, the issue of whether the district court's pretrial order is erroneous is a question of law, subject to de novo review. State v. Othoudt, 482 N.W.2d 218, 221 (Minn.1992). The state must show that the district court "clearly and unequivocally erred" in its ruling. State v. Bell, 557 N.W.2d 603, 605 (Minn.App.1996) (quotation omitted), review denied (Minn. Mar. 18, 1997).

In a recent case, the Minnesota Supreme Court reaffirmed that a police officer must have a reasonable, articulable suspicion of criminal activity in order to expand the scope of a routine traffic stop beyond the underlying justification for the stop. State v. Fort, 660 N.W.2d 415 (Minn.2003). In particular, the supreme court concluded that the suspect's consent, taken alone, is insufficient to permit expansion of a routine traffic stop; the police officer must have a reasonable, articulable suspicion of further criminal activity in order to request consent to expand the stop. Id. at 418. The supreme court concluded that testimony that the suspect seemed nervous, avoided eye contact, and was stopped in a "high drug" area" was insufficient to justify expansion of the scope of the stop. Id. at 419.

■ Fort, however, does not prohibit consensual searches; rather, it clarifies and emphasizes the need to justify the expansion of the scope of the stop with something that is more than a hunch or a whim. Investigative stops, and the expansion of the scope of the stop, are permitted where a police officer can point to a particularized basis for suspecting criminal activity. Id. at 418; see also State v. George, 557 N.W.2d 575, 578 (Minn.1997). The question, then, is whether the deputy sheriff articulated a particularized basis for suspecting criminal activity that would permit expansion of the scope of the stop.

Kvasnicka's initial investigation of a motorist slumped over his steering wheel was clearly lawful. During this part of the encounter, he acquired additional information based on respondent's physical conduct. Respondent stated he had been sleeping in that location for approximately four hours, yet he was still groggy and disoriented. Respondent was confused about where he was, his eyes were red and bloodshot, and his demeanor was consistent with intoxication, yet Kvasnicka smelled no alcohol. Although respondent stood outside his vehicle for 20 minutes conversing with the deputies, he was still "groggy," according to the testimony of both deputies. Both deputies agreed that respondent appeared unfit to drive and Kvasnicka concluded that what he ob-

served was consistent with intoxication by drugs other than alcohol. These observations, unlike the subjective conclusions in *Fort*, presented a particularized reason for expansion of the original stop and a basis for Kvasnicka's request for consent to search the vehicle.

We therefore conclude that the district court erred in suppressing the drug evidence. Because the district court did not reach the issue of whether consent was freely and voluntarily given, and because the record does not include evidence on this issue, we do not address it here. Based on our decision to remand, the issue of validity of the consent is yet to be determined and may be raised on remand, if appropriate.

2.  *Inventory Search/Inevitable Discovery*

■ As an alternative, the state argues that the drug evidence would inevitably have been discovered during a lawful inventory search. In reference to this, the district court opined that the drug evidence must still be suppressed because respondent's arrest resulted from an illegal search. That conclusion was error.

■ An inventory search is an exception to the search warrant requirement. *State v. Ture*, 632 N.W.2d 621, 628 (Minn. 2001). An inventory search is not based on probable cause; this type of search is deemed reasonable because the police are performing administrative or caretaking functions of protecting the property of the owner of an impounded vehicle and shielding the police from claims that property was lost or destroyed while a vehicle was impounded. *Holmes*, 569 N.W.2d at 186. The critical factor in approving an inventory search is whether the search was carried out in accordance with the standard procedure of the law enforcement agency. *Id.* at 187.

Here, Kvasnicka testified that as a matter of department policy, when a driver appears unable to safely drive, the vehicle will be impounded if illegally parked. The state introduced into evidence a copy of the department's impoundment and inventory policy. The district court gave little weight to the department policy because it was a policy formulated by the sheriff. Department policy, however, is a critical consideration in determining whether an inventory search is valid. *Id.; see State v. Rodewald*, 376 N.W.2d 416, 421 (Minn. 1985).

■ The second part of the state's argument is that evidence illegally obtained need not be suppressed if it inevitably would have been discovered by other, lawful means. *See Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *Rodewald*, 376 N.W.2d at 422.

> When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation ... If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received. Anything less would reject logic, experience, and common sense.

*Nix*, 467 U.S. at 443–44, 104 S.Ct. at 2508–09 (footnote omitted).

The record suggests that under department policy, respondent's truck would have been impounded, either because respondent appeared unfit to drive or because he was arrested pursuant to the warrants, and that the drug evidence would have been discovered during an inventory search. Without adequate findings by the district court, however, we are

unable to determine if department policy was followed in this instance. On remand, we direct the district court to fully consider department policy and whether it would lead to the inevitable discovery of the drug evidence.

## DECISION

The district court erred by suppressing the drug evidence based on *State v. Fort*, 660 N.W.2d 415 (Minn.2003) alone and by failing to apply the appropriate standards for inventory searches. Based on this record, the questions of voluntariness of the consent to search and compliance with a standard department policy for inventory searches remain unresolved. We therefore reverse and remand this matter for further proceedings consistent with this opinion.

**Reversed and remanded.**