STATE of Minnesota, Respondent,

v.

Peggy Louise BURBACH, Appellant.

No. A04–1530.

Supreme Court of Minnesota.

Dec. 1, 2005.

Richmond H. McCluer, Jr., John Paul Plachecki, Price, McCluer & Plachecki, Winona, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN, Charles E. MacLean, Winona County Attorney, Winona County Courthouse, Winona, MN, for respondent.

## OPINION

ANDERSON, RUSSELL A., Justice.

In this case, the state appealed a pretrial order by the district court suppressing crack cocaine seized during the consensual search of a vehicle stopped for speeding, and also suppressing additional evidence of drug possession and drug use subsequently seized at the stationhouse from the driver, appellant Peggy Louise Burbach. The court of appeals reversed the district court, concluding that the officer's detection of the odor of alcohol coming from Burbach's vehicle justified the officer's search. *State v. Burbach,* No. A04–1530, 2005 WL 221980, at *4 (Minn. App. Feb.1, 2005). We granted review and now reverse, concluding, as did the district court, that the officer's request to search the vehicle violated Article I, Section 10 of the Minnesota Constitution because it was not supported by a reasonable, articulable suspicion of additional criminal activity beyond the original purpose of the stop.

Shortly before 1:30 a.m. on February 8, 2004, a police officer clocked Burbach traveling 55 miles per hour in a 30–miles–per–hour speed zone on 6th Street in Winona, Minnesota. The officer pulled up behind Burbach and turned on his lights, and she pulled over after traveling about a block and then drove slowly in the parking lane for three quarters of a block before stopping. Once the officer approached the vehicle and had Burbach identify herself, he remembered her name and her vehicle's license plate from a tip he had received from his sergeant at a shift-change meeting one or two weeks earlier. At the meeting, his sergeant had shown him a short list of the license-plate numbers of vehicles suspected by narcotics officers of carrying crack cocaine. His sergeant also told him the corresponding owners' names, including Burbach's.

As the officer spoke to Burbach, he detected a strong odor of alcohol, but he could not tell if the smell came from Burbach or her passenger, a middle-aged man seated next to her. The passenger volunteered that the alcohol smell came from him, and after ordering Burbach out of the car, the officer smelled no odor of alcohol coming from her. The officer then conducted a nystagmus-gaze test on Burbach, which showed no signs of nystagmus, and a breathalyzer test, which indicated that Burbach's alcohol concentration was .000. In addition, Burbach's eyes were neither watery nor bloodshot, and she had no problems related to balance, coordination, vision, following directions, answering questions, or with slurred or ungrammatical speech. The officer concluded that the odor of alcohol did not come from Burbach, but he felt that she was significantly more nervous, fidgety, and talkative than a normally nervous person in a traffic stop. He asked her if she had recently used any illegal drugs or if she had any in her car. She answered "no" to both questions, although she said she had taken some NyQuil earlier in the evening.

At this point, about 15 minutes into the traffic stop, the officer requested and obtained Burbach's consent to search the vehicle. He testified that he wanted to search the vehicle because Burbach's nervous behavior suggested impairment, and that the tip he had received at the shift-change meeting made him more eager to search due to its suggestion that her car may contain crack cocaine. After a second officer removed Burbach's passenger from the vehicle, the officer opened the driver's side door and saw three baggies of crack cocaine sitting on the passenger seat. The officers then arrested Burbach and her passenger. At the stationhouse, an additional rock of crack cocaine and a pipe were found in Burbach's bra during a body search. She also consented to a urine test, and its results showed that she had marijuana and cocaine in her system.

The state charged Burbach with possession of narcotics, driving under the influence of a controlled substance, possession of drug paraphernalia, speeding, and failure to provide proof of insurance. Burbach moved to suppress the crack cocaine and the other drug-related evidence found during the vehicle search and subsequently at the stationhouse, arguing that the search of her vehicle was a violation of her rights under Article I, Section 10 of the Minnesota Constitution because the search was not supported by a reasonable, articulable suspicion of criminal activity beyond the original purpose of the stop, and that evidence obtained subsequent to the search was therefore also tainted. Relying on our decision in *State v. Fort*, 660 N.W.2d 415 (Minn.2003), the district court agreed that the officer's request to search the vehicle was not supported by reason-

able, articulable suspicion, and therefore suppressed the crack cocaine, the pipe, and the urine-test results, and dismissed the drug-related charges. The state appealed the pretrial order,[1] and the court of appeals reversed the district court's order, basing its decision on *State v. Schinzing*, 342 N.W.2d 105 (Minn.1983), in which we permitted a vehicle search when an officer detected the odor of alcohol coming from a vehicle. *Burbach*, 2005 WL 221980. We then granted Burbach's petition for review.

## I.

This case presents two questions. First, Burbach asks us to revisit the court of appeals' determination that a request to search a vehicle is justified under the Minnesota Constitution when an officer detects the odor of alcohol coming from an adult passenger. Second, we consider the state's contention that, under the totality of circumstances in this case, the officer's request to search Burbach's vehicle was justified by a reasonable, articulable suspicion of drug possession.

We undertake a de novo review to determine whether a search or seizure is justified by reasonable suspicion or by probable cause. *State v. Lee*, 585 N.W.2d 378, 382–83 (Minn.1998) (citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). The district court's findings of fact are reviewed for clear error. *Id.* Here, the facts are undisputed, and so our review is entirely de novo.

Both the United States and Minnesota Constitutions prohibit "unreasonable searches and seizures." U.S.

---

1. Under Minnesota Rule of Criminal Procedure 28.04, subds. 1(1) and 2(1), the state can appeal a pretrial order in a criminal prosecution if the order will "have a critical impact on the outcome of the trial." Here, since the

suppression of the evidence led directly to the dismissal of all the state's drug-related charges, it is clear that the order had the requisite critical impact.

Const. amend. IV; Minn. Const. art. I, § 10. Generally, "a search conducted without a warrant issued upon probable cause is *per se* unreasonable." *State v. Hanley*, 363 N.W.2d 735, 738 (Minn.1985) (internal quotations omitted) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). However, this rule is "subject * * * to a few specifically established and well delineated exceptions." *Id.* Due to the exigent circumstances presented by automobiles, there is "a well-established exception to the search warrant requirement for cases involving transportation of contraband goods in motor vehicles." *State v. Munson*, 594 N.W.2d 128, 135 (Minn.1999).

In *Atwater v. City of Lago Vista*, the United States Supreme Court determined that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). When the offender is the occupant of a vehicle, the officer may also conduct a search of the vehicle. *See id.* at 364, 121 S.Ct. 1536 (O'Connor, J., dissenting); *see also New York v. Belton*, 453 U.S. 454, 462–63, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

■ But we have rejected the *Atwater* approach as a "sharp departure" from our search and seizure jurisprudence. *State v. Askerooth*, 681 N.W.2d 353, 362 (Minn.2004). In contrast to the laxer requirements of the United States Constitution as articulated in *Atwater*, we have held that Article I, Section 10 of the Minnesota Constitution requires that "the scope and duration of a traffic stop investigation must be limited to the justification for the stop." *Fort*, 660 N.W.2d at 418. And any "intrusion not closely related to the initial justification for the search or

seizure is invalid under article I, section 10 unless there is independent probable cause or reasonableness to justify that particular intrusion." *Askerooth*, 681 N.W.2d at 364. Both probable cause and reasonableness are evaluated by looking at the "totality of the circumstances." *State v. Henning*, 666 N.W.2d 379, 384–85 (Minn.2003). Analysis under these standards must be "particularized" and "individualized to the driver." *Askerooth*, 681 N.W.2d at 364; *Fort*, 660 N.W.2d at 418.

■ When an officer expands a traffic stop by requesting to search a vehicle, and when this request is not justified by the original purpose of the stop, the officer must have a "reasonable articulable suspicion of other criminal activity" going beyond the initial reason for the stop. *Fort*, 660 N.W.2d at 419. Here, since the officer's request to search Burbach's vehicle was not justified by Burbach's speeding, to be valid under the Minnesota Constitution, the request must have been supported by a reasonable, articulable suspicion of additional criminal activity. And to be reasonable, any intrusion in a routine traffic stop must be supported by an "objective" and fair "balancing of the government's need to search or seize 'and the individual's right to personal security free from arbitrary interference by law officers.'" *Askerooth*, 681 N.W.2d at 364–65 (quoting *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)).

Since reasonable, articulable suspicion must be "particularized," we must evaluate the state's two proffered justifications for the search separately. *Fort*, 660 N.W.2d at 418. We first consider whether the odor of alcohol coming from an adult passenger provides a reasonable, articulable suspicion of an open-container violation. Second, we consider whether, under the totality of the circumstances, there was a

reasonable, articulable suspicion of drug possession.

## II.

■ The state urges that the odor of alcohol coming from a vehicle should always justify a search for open containers of alcohol. It supports this claim with our decision in *Schinzing,* in which we held that a vehicle search was permissible when an officer pulled a vehicle over for suspicious driving, was told by the passengers that they were 17 years old, smelled alcohol coming from the vehicle, and was told by the passengers that they had been drinking. 342 N.W.2d 105. In this context, we stated:

> [The officer's] detection of the odor of alcohol coming from the car gave him probable cause to believe that a search of the passenger compartment would reveal open bottles or cans of alcohol.

*Id.* at 109.

The state argues that this language articulates a bright-line rule that the odor of alcohol always justifies a vehicle search. We disagree. Since analysis under Article I, Section 10 of the Minnesota Constitution must be "individualized" and viewed under "the totality of the circumstances" of each case, the odor of alcohol in *Schinzing* must be examined in light of its particular context. Most significantly, in *Schinzing* the officer's knowledge that the vehicle's passengers were 17 made his detection of the odor of alcohol clear evidence of underage drinking. Having established this first alcohol-related crime, it was reasonable to suspect an open-container violation as well. Since people who are underage cannot legally drink alcohol, such people are more likely to drink in vehicles, out of the public view. Therefore, when the officer in *Schinzing* smelled the odor of alcohol, he had a reasonable, articulable suspicion of additional criminal activity beyond the original purpose of the stop, and he was justified searching the vehicle.

But the circumstances in this case are very different. Burbach's adult passenger volunteered that he had been drinking earlier, and the officer knew, after getting Burbach out of the vehicle and performing sobriety tests, that she had not been drinking. At best, these facts provide only an attenuated inference of an open container. To allow a vehicle search solely because an adult passenger smelled of alcohol would be to permit highly speculative searches against a large group of entirely law-abiding motorists, including designated drivers. Such a rule would not comport with the substantial privacy interest in motor vehicles that the Minnesota Constitution ensures. *State v. Wiegand,* 645 N.W.2d 125, 131 (Minn.2002). Accordingly, we hold that under Article I, Section 10 of the Minnesota Constitution, an officer's detection of the odor of alcohol coming from an adult passenger during a traffic stop does not, by itself, provide a reasonable, articulable suspicion of an open-container violation sufficient to permit an officer to expand the traffic stop by requesting to search the vehicle.

## III.

■ Since the request to search was not justified by a reasonable, articulable suspicion of an open container, we consider the state's contention it was justified as a search for illegal drugs.[2] The state points

---

2. Two of the state's other arguments deserve brief mention here. First, the state also argues that the search was justified as a search incident to probable cause to arrest for driving under the influence of drugs. Since the relevant evidence supporting this theory is the same evidence that supports a suspicion of drug possession, and since the reasonable-suspicion standard is no higher than the probable-cause-to-arrest standard, *Wiegand,* 645

to three factors suggesting that Burbach was on drugs or in possession of them: (1) Burbach's demeanor, which was nervous, fidgety, and talkative in a way that the officer found more extreme than usual; (2) the tip the officer had received from his sergeant one to two weeks earlier; and (3) Burbach's driving behavior.

First, we consider Burbach's demeanor. We have been reluctant to rely on nervous behavior as evidence to support a reasonable, articulable suspicion of criminal activity. *See Wiegand*, 645 N.W.2d at 138 (determining that a drug dog sniff of a vehicle was not justified where the driver was evasive, nervous, and shaking, and noting that "acting suspiciously is not an articulable basis to suspect criminal activity"); *see also Fort*, 660 N.W.2d at 417, 419 (determining that officers were not justified asking for consent to search a vehicle when the vehicle's occupants had committed a traffic violation, were driving in a "high drug area," and were acting nervous and avoiding eye contact). While the officer testified that Burbach's nervousness was significantly more than normal nervousness during a traffic stop, the district court observed that her nervousness was reasonable in the context of intense police questioning. Therefore, the district court concluded that the state's argument that Burbach's nervousness contributed to a finding of reasonable suspicion was "without merit." We agree with the district court's evaluation.

■ Second, we turn to the tip, which must be evaluated in the context of the totality of the circumstances. *State v. McCloskey*, 453 N.W.2d 700, 702–03 (Minn.

1990). When evaluating tips, courts are to "make a practical, common-sense decision whether, given all the circumstances * * * including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The tip in this case, consisting only of Burbach's name and license plate number, was passed on at a shift-change meeting to the officer from his sergeant, who, in turn, had gotten the tip from narcotics officers. Beyond this, the state has not attempted to establish the tip's origins, how old the tip was, or whether the tip was substantiated, and the state has provided no other method of evaluating its reliability. The district court stated that "[b]ecause of its lack of veracity and corroboration, this Court declines to give such a tip much weight in its decision." Again, we agree with the district court's conclusion.

Third, we believe that Burbach's driving behavior—speeding 55 miles per hour in a 30–miles–per–hour zone, and perhaps pulling over and stopping somewhat slowly— provides little reason to suspect drug possession.

Each of these factors is weak evidence of drug possession, and they are also weak in the aggregate. In addition, Burbach showed no other signs of impairment. Her eyes were neither watery nor bloodshot and showed no signs of nystagmus, and she had no problems related to balance, coordination, vision, following directions, answering questions, or with slurred or ungrammatical speech. There-

N.W.2d at 133, we need only address the question of reasonable suspicion of drug possession. Second, the state argues that the search was justified as a search incident to probable cause to arrest for speeding and failure to provide proof of insurance. How-

ever, we have held that minor violations such as these, which call for citation only under Minn. R.Crim. P. § 6.01, may not be the basis for a search incident to probable cause to arrest. *State v. Varnado*, 582 N.W.2d 886, 892–93 (Minn.1998).

fore, we hold that under Article I, Section 10 of the Minnesota Constitution, when an officer's suspicion of drug possession during a traffic stop is supported only by a driver's nervous behavior, an unsubstantiated tip of unknown origin, and speeding, and when the driver does not exhibit other signs of impairment, the officer does not have a reasonable, articulable suspicion of drug possession sufficient to permit the officer to expand the traffic stop by requesting to search the vehicle.

We conclude that because there was not a reasonable, articulable suspicion of any additional criminal activity aside from the initial reason for the stop, the officer was not justified requesting to search Burbach's vehicle. We therefore reverse the decision of the court of appeals. Accordingly, we reinstate the decision of the district court suppressing both the evidence seized during the search of Burbach's vehicle and all evidence seized subsequently as a result of her arrest, and also dismissing the charges of fourth-degree driving while impaired, fifth-degree possession of a controlled substance, and possession of drug paraphernalia. We remand to the district court for further proceedings on the remaining charges of speeding and failure to provide proof of insurance.

Reversed and remanded.