*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1238**

State of Minnesota,
Respondent,

vs.

Alex Robert Galvan,
Appellant.

**Filed June 8, 2015
Affirmed
Chutich, Judge**

Dakota County District Court
File No. 19HA-CR-14-694

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Chip Granger, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Chutich, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Alex Galvan challenges his conviction of second-degree possession of a controlled substance, arguing that the district court erred by declining to suppress

evidence found on his person and in his car. Because the evidence would have inevitably been discovered, we affirm.

## FACTS

In the early morning hours of February 23, 2014, Eagan Police Officer Peter Meyer arrested Alex Galvan for second- and fifth-degree possession of a controlled substance. Officer Meyer initially stopped Galvan after he saw Galvan make a left turn without using his turn signal.

Officer Meyer approached the car and asked Galvan for his driver's license; Galvan said he did not have his license with him. Officer Meyer asked Galvan why he did not have his license, but Galvan did not respond. Officer Meyer then asked Galvan if his license was valid, and Galvan said it was not.

Officer Meyer stated that Galvan avoided eye contact and provided short answers, and Officer Meyer "felt like [Galvan] had something to hide"; Officer Meyer said Galvan's behavior gave him "kind [of] a . . . weird feeling." Because of this behavior and because Galvan had no license and could not be identified, Officer Meyer asked Galvan to step out of the car. Officer Meyer handcuffed Galvan and told him that he was being detained. Officer Meyer asked Galvan if he had anything illegal on him; Galvan said that he did not. Officer Meyer asked if he could check Galvan to be sure, and Galvan said "go ahead."

Officer Meyer patted the outside of Galvan's clothes, checking for weapons. Although he did not find any weapons, he did feel a plastic bag in Galvan's pants pocket. Officer Meyer asked Galvan what was in the bag, and Galvan told him it was money.

Officer Meyer asked if he could go through the pocket, and Galvan again told him to go ahead. Officer Meyer then pulled out the bag, which appeared to contain methamphetamine. Officer Meyer asked what the substance was, but Galvan did not respond.

Officer Meyer arrested Galvan and put him in the back of his squad car. Galvan told Officer Meyer his name, and Officer Meyer checked Galvan's driver's license. He learned that Galvan's license was revoked and that Galvan had 18 previous license suspensions or failures to appear in court.

Because the car Galvan was driving was blocking part of a traffic lane and no valid drivers were present, Officer Meyer decided to have it towed. Two other officers arrived and conducted an inventory search of the car. They found a digital scale, a bag of marijuana, and a second bag of methamphetamine in the car's center console.

Galvan was charged with second- and fifth-degree possession of a controlled substance. *See* Minn. Stat. §§ 152.022, subd. 2(a)(1), .025, subd. 2(b)(1) (2012).

Galvan moved to suppress the evidence and have the charges dismissed. After a contested omnibus hearing, the district court denied this motion. It concluded that Officer Meyer had reasonable, articulable suspicion to stop Galvan. It also determined that the search of Galvan's person was valid, concluding that Galvan voluntarily consented to the search and that the "plain feel" doctrine applied. The district court concluded that the search of the car was valid as either an inventory search or a search incident to arrest. In the alternative, the district court concluded that the inevitable-discovery doctrine applied: Galvan would have been arrested because of his license

3

status, and he would have been searched and the methamphetamine in his pocket found. Then, the car would have been towed and an inventory search conducted.

Galvan agreed to a stipulated-facts trial, and the district court found him guilty on both counts. It convicted him of second-degree possession of a controlled substance and sentenced him to 95 months in prison. Galvan appealed.

## DECISION

Galvan makes several arguments to support his claim, asserting that (1) no reasonable, articulable suspicion existed to expand the scope of the stop, (2) no reasonable basis supported the pat search, (3) he did not voluntarily consent to the search, and (4) the drugs would not have been inevitably discovered. We have concerns about several facets of this encounter, particularly the voluntariness of Galvan's consent and the application of the "plain feel" doctrine. But we nevertheless affirm because, given Galvan's lack of a valid driver's license and his lengthy record of failing to appear in court, the drugs would have been inevitably discovered upon his valid arrest for driving without a license.

When reviewing a pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the legal determinations de novo. *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009). When the facts are not in dispute, we independently review the facts and determine whether the evidence needs to be suppressed as a matter of law. *Id.*

The United States and the Minnesota Constitutions protect against unreasonable searches and seizures. U.S. Const. amend IV; Minn. Const. art. 1, § 10. Warrantless

4

searches are generally unreasonable unless an exception to the warrant requirement applies. *State v. Burbach*, 706 N.W.2d 484, 488 (Minn. 2005). But if the state can prove "by a preponderance of the evidence that the fruits of a challenged search ultimately or inevitably would have been discovered by lawful means, then the seized evidence is admissible even if the search violated the warrant requirement." *State v. Licari*, 659 N.W.2d 243, 254 (Minn. 2003) (quotations omitted). The inevitable-discovery doctrine is a narrow exception and "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment." *Id.* (quotation omitted). The inevitable-discovery doctrine seeks to avoid "setting aside convictions that would have been obtained without police misconduct." *Nix v. Williams*, 467 U.S. 431, 443 n.4, 104 S. Ct. 2501, 2509 n.4 (1984).

Galvan argues that the district court erred by crediting Officer Meyer's testimony that he would have arrested Galvan for driving after revocation and searched him incident to arrest. We disagree.

After stopping Galvan, Officer Meyer learned that Galvan did not have a valid driver's license. Although he did not do a license check on Galvan until after searching him, Officer Meyer testified that it is standard for the police to identify everyone with whom they come into contact. Officer Meyer would have then inevitably learned of Galvan's numerous license suspensions and failures to appear in court.

Officer Meyer also testified that he then would have arrested Galvan based on his driving record. The Eagan Police Department Traffic Law Enforcement Policy Manual

supports this assertion. This policy states:

> Under Minnesota Motor Vehicle Laws, violations of driving after cancellation, revocation or suspension is a misdemeanor.
>
> If the officer has supporting data from the Minnesota Driver[']s License Bureau that the violator's license has been canceled, revoked or suspended, the officer **shall effect a physical arrest** if the officer believes[:]
> \*\*\*
> 3. That there is [a] substantial likelihood that the accused will fail to respond to a citation, or
>
> 4. The violator has no proof of identification.

(Emphasis added.)

This policy accords with Minnesota Rule of Criminal Procedure 6.01, subdivision 1(a). This subdivision states that in misdemeanor cases, the police must issue a citation and release the defendant unless it reasonably appears that "a substantial likelihood exists that the person will not respond to a citation." Minn. R. Crim. P. 6.01, subd. 1(a). Based on Galvan's lengthy history of failing to appear in court, we agree with the district court's conclusion that Officer Meyer would have arrested Galvan because of a justifiable concern that Galvan would not appear. He could then have searched Galvan incident to that arrest. Because Officer Meyer would have inevitably arrested and searched Galvan, the drugs in Galvan's pocket would have inevitably been discovered. *See State v. Lembke*, 509 N.W.2d 182, 184 (Minn. App. 1993) (holding that drugs found in a search were admissible under the inevitable-discovery doctrine because the defendant would have inevitably been arrested and searched).

6

Galvan also argues that the district court erred by concluding that the drugs in the car also would have inevitably been discovered. Galvan's contention lacks merit.

The Eagan Police Department Towing and Traffic Services Policy Manual provides that

> A towing authority may tow a motor vehicle without regard to the four-hour waiting period if:
> ***
> h. The vehicle is parked within the right-of-way of a controlled access highway or within the traveled portion of a public street when travel is allowed there[.]

This policy also accords with Minnesota law. *See* Minn. Stat. § 168B.035, subd. 3(b)(8) (2014). Additionally, the impoundment of a car must be reasonable under the Fourth Amendment. *State v. Rohde*, 852 N.W.2d 260, 264 (Minn. 2014); *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008).

If a car is towed, the Eagan policy states that "[a] complete inventory search of the vehicle shall be conducted since the police department is responsible for the contents." Following these procedures after Galvan's arrest, officers conducting the permissible inventory search would have discovered the methamphetamine, marijuana, and other drug paraphernalia in the center console of the car.

Galvan argues that because impoundment was not immediately necessary, the inventory search was unreasonable. Galvan asserts that nothing required law enforcement officers to tow Galvan's car merely because it was parked within the travelled portion of a public street and that, under department policy, Officer Meyer

7

should have contacted the car's owner to allow that person to pick up the car. Galvan relies on *State v. Goodrich*, 256 N.W.2d 506 (Minn. 1977) to support this contention.

In *Goodrich*, the Minnesota Supreme Court held that impoundment was not a reasonable means of furthering a reasonable state purpose when the defendant had arranged for a family member to drive his car home. *Id.* at 511. The *Goodrich* court acknowledged that "the necessity of protecting the arrested individual's property from theft and the police from claims arising therefrom" could justify impoundment. *Id.* But in *Goodrich*, the police had allowed the defendant to make a phone call at a nearby gas station, and the defendant's mother and brother had arrived on the scene and asked the officer if they could take the car before it was towed. *Id.* at 508. Because the defendant had assumed responsibility for and, in fact, had arranged an alternative, reasonable way to safeguard the property and remove it from the side of the street, impoundment was unnecessary and unreasonable. *Id.* at 511.

*Goodrich* stands in marked contrast to the case at hand. Here, Galvan was arrested and was therefore unavailable to take care of the car himself. While Galvan told Officer Meyer who owned the car, the alleged owner was not on site and had not been contacted by Galvan to secure the car. Galvan does not argue that he ever specifically asked Officer Meyer to allow him to make alternative arrangements for the car; rather, he merely suggests that he made Officer Meyer aware that he was not the owner of the car.

Galvan finally argues that the lateness of the hour and the position of the car (partially blocking only one of four lanes of traffic at a time when traffic was not heavy) support his assertion that impounding the car was not necessary. But he does not dispute

8

that standard law enforcement procedures were followed. Because Officer Meyer followed such procedures, the inventory search was reasonable. So long as police follow reasonable standard procedures, they are not constitutionally required to act in the least intrusive manner. *See Colorado v. Bertine*, 479 U.S. 367, 374-75, 107 S. Ct. 738, 742-43 (1987); *City of St. Paul v. Myles*, 298 Minn. 298, 302-03, 218 N.W.2d 697, 700 (1974). And here, where the facts show that Galvan's car partially blocked a lane of traffic, moving the car seemed prudent. As the supreme court has explained, "impounding may be reasonable . . . to permit the uninterrupted flow of traffic, or when vehicles . . . jeopardize the public safety and the efficient movement of traffic. In these situations, the authority of the police to impound vehicles is beyond challenge." *Rohde*, 852 N.W.2d at 265 (quotation omitted).

In sum, because of Galvan's initial admission that he had no valid driver's license and his lengthy history of failure to appear in court, Galvan's arrest was near certain under state and local procedures governing misdemeanor arrests. Once Officer Meyer arrested Galvan, he could search Galvan's body incident to that arrest, leading to the discovery of methamphetamine in Galvan's pocket. Galvan's physical arrest would leave the car with no driver and partially blocking a lane of traffic. Under these circumstances, towing the car was reasonable and the resulting inventory search would have inevitably led to the discovery of drugs in the car. Accordingly, the district court appropriately concluded that the challenged evidence was admissible under the inevitable-discovery doctrine.

**Affirmed.**