*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2017**

State of Minnesota,
Respondent,

vs.

Erik Edward Malmquist,
Appellant.

**Filed November 23, 2015
Affirmed
Hooten, Judge**

Meeker County District Court
File Nos. 47-CR-14-91

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brandi Schiefelbein, Meeker County Attorney, Litchfield, Minnesota; and

Scott A. Hersey, Special Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Worke, Judge; and Kalitowski, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant challenges his conviction of fifth-degree possession of a controlled substance, asserting that the district court erred by denying his motion to suppress evidence found during a search of his vehicle. We affirm.

## FACTS

On the afternoon of February 6, 2014, Meeker County Deputy Sheriffs Ryan Schutz and William Hudson received a report of a truck that had been in a ditch with its engine running for a length of time. After approaching the vehicle and observing that the driver, appellant Erik Edward Malmquist, appeared asleep, the deputies awoke him and noticed that he exhibited signs of impairment. The deputies administered field sobriety tests and a preliminary breath test. Based on the results of these tests, the deputies began to question Malmquist regarding the presence of drugs in his vehicle. After Malmquist made several incriminating statements, Deputy Schutz searched the vehicle and located straws and baggies containing about two grams of methamphetamine. A later inventory search of Malmquist's vehicle also "yielded 10 [o]xycodone pills, 7 [h]ydrocodone pills, an Oxycontin pill, a water bong, two pipes with a heavy methamphetamine coating, a newer pipe containing residue, a scale containing a crystal-like substance, straws, rubber bands, Q-tips, a razor blade, a butane lighter, and butane fluid."

Malmquist was charged with two counts of fifth-degree possession of a controlled substance and one count of possession of drug paraphernalia. At the omnibus hearing held on April 9, 2014, Malmquist sought to suppress the contraband found in his vehicle

as fruits of an illegal search on the grounds that they were found as a result of an unlawfully expanded stop and illegal search. The district court denied Malmquist's motion to suppress this evidence, concluding that the deputies had "probable cause to search the truck for the drugs or paraphernalia that [Malmquist] had referenced" in his conversation with the deputies.

Pursuant to Minn. R. Crim. P. 26.01, subd. 4, Malmquist waived his right to trial and stipulated to the state's case in order to obtain appellate review of the district court's pretrial ruling. The district court found Malmquist guilty of all three counts and sentenced him on one count of fifth-degree possession to the presumptive guidelines sentence of 13 months, stayed for five years. This appeal followed.

## D E C I S I O N

Malmquist requests that we reverse the district court's denial of his motion to suppress the evidence obtained as the result of an illegal search and dismiss the charges against him. In support of this request, Malmquist argues that the deputies unlawfully expanded the scope of the stop. Additionally, Malmquist alleges that any statements made by him immediately prior to the search were the product of coercion brought about by the circumstances of the investigation. Malmquist claims that the statements were given as a result of the deputies making him stand out in the cold for an extended period of time without adequate warm clothing. Finally, Malmquist argues that the district court erred by determining that the deputies had probable cause to search his vehicle without his consent.

3

Based upon this record, which includes a squad camera and an audio recording of the encounter between the deputies and Malmquist at the scene of the accident, we conclude that the deputies did not unlawfully expand the scope of the stop. Additionally, we hold that the district court did not err in its conclusion that Malmquist's statements to the deputies immediately prior to the search were voluntary. Finally, we hold that the district court did not err by denying Malmquist's motion to suppress and determining that the deputies had probable cause to search the vehicle based upon the totality of the circumstances.

When reviewing a pretrial order on a motion to suppress, we review the factual findings for clear error and the legal determinations de novo. *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009). The United States Constitution and the Minnesota Constitution guarantee individuals the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A seizure occurs if, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he or she was neither free to disregard the police questions nor free to terminate the encounter." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995). Not all contacts between police and a citizen constitute a seizure. *In re Welfare of E.D.J.*, 502 N.W.2d 779, 781 (Minn. 1993). For example, when an officer activates the squad car's emergency lights and pulls up behind a vehicle already parked on a rural highway shoulder at night, that "conduct would not have communicated to a reasonable person . . . that the officer was attempting to seize the person. A reasonable person would have assumed that the officer was not doing anything other than checking to see what was

4

going on and to offer help if needed." *State v. Hanson*, 504 N.W.2d 219, 219–220 (Minn. 1993).

Here, as was the case in in *Hanson*, the deputies did not seize Malmquist by approaching his vehicle to check on his welfare. The record reveals that on a sunny February afternoon, the deputies were called by dispatch regarding a red truck in the ditch. Without activating their lights or sirens, they immediately responded and observed the vehicle, with its engine still running, in the ditch with front-end damage. Upon further investigation, they observed that the driver, Malmquist, appeared to be sleeping or unconscious and, after waking him up, noticed that his eyes were bloodshot and that his speech was slow and slurred. Upon making these observations, the deputies suspected that Malmquist was under the influence of either drugs or alcohol. While the initial conduct of the deputies was permissible as a welfare check, the welfare check ended when the deputies were able to speak with Malmquist and ascertain his well-being.

But, by that time, the deputies had reasonable suspicion that Malmquist was under the influence of alcohol or drugs. A police officer may initiate a brief investigative stop when the officer has reasonable suspicion of criminal activity. *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001). Because the deputies observed indicia of impairment after speaking with Malmquist, they properly initiated an investigative stop and had Malmquist perform field sobriety tests to investigate his impairment.

When Deputy Schutz had Malmquist perform field sobriety tests on the roadway in front of the squad car about four minutes into the encounter, Malmquist performed poorly. Deputy Hudson questioned Malmquist regarding drug use, and Malmquist

5

responded that he had not "snorted" that day, but had used drugs the previous day. According to the squad video and audio, Deputy Schutz administered a preliminary breath test approximately 12 minutes into the encounter. The deputies testified that even though the preliminary breath test was negative for alcohol use, they suspected that Malmquist was under the influence of drugs because of the signs of impairment he exhibited. Deputy Hudson, who had experience dealing with defendants who used methamphetamine and had had prior drug-related encounters with Malmquist, believed that Malmquist was high on methamphetamine and was exhibiting a "crash" period as the effects of the drug wore off. After Malmquist took the preliminary breath test, Deputy Hudson advised him that he was not under arrest, but that he believed Malmquist was "high."

Next, the deputies expanded the stop beyond the investigation of Malmquist's impairment by questioning Malmquist about the presence of drugs in his vehicle. "[T]he scope and duration of a traffic stop investigation must be limited to the justification for the stop." *State v. Fort*, 660 N.W.2d 415, 418 (Minn. 2003). An intrusion not directly tied to the initial reason for the stop must be supported by reasonable suspicion of other illegal activity. *State v. Smith*, 814 N.W.2d 346, 350 (Minn. 2012). Here, because Malmquist admitted to using drugs the previous day and exhibited signs of impairment that suggested recent drug use, the deputies had reasonable suspicion to suspect that Malmquist's vehicle might contain drugs or drug paraphernalia.

According to the video, Deputy Hudson expanded the stop and began to question Malmquist about the presence of drugs and drug paraphernalia in his vehicle

6

approximately 14 minutes into the encounter. According to Deputy Hudson, Malmquist laughed when asked if there were pounds of drugs in his vehicle and, in response to being asked whether three grams were in his vehicle, said, "[N]ot three grams." About 15 minutes into the encounter, Malmquist indicated that a small amount of drugs in a baggie was located near the driver's seat. At that point, Deputy Hudson directed Deputy Schutz to search the truck for drugs.

Malmquist argues that his statements to police were involuntary because they were induced by coercion. We review the district court's determination of whether a statement was voluntary de novo, but we accept the underlying factual determinations of the district court unless they are clearly erroneous. *State v. Zabawa*, 787 N.W.2d 177, 182 (Minn. 2010). "A defendant is deprived of due process of law under the Fourteenth Amendment when the defendant's conviction is founded on an involuntary statement." *State v. Riley*, 568 N.W.2d 518, 525 (Minn. 1997). In determining voluntariness, the question is "whether the defendant's will was overborne" when he gave the statement. *Zabawa*, 787 N.W.2d at 182. We consider the totality of the circumstances when determining whether a statement was voluntary. *Id.*

The evidence does not suggest that Malmquist was coerced into making involuntary statements. The district court found that Malmquist "gave voluntary responses to Deputy Hudson's questions" and that "[t]he evidence does not show that deputies improperly coerced or pressured [Malmquist]." Consistent with the squad video, the deputies testified that they did not have their guns out and that they spoke with

Malmquist in a conversational tone.  As the district court noted, the deputies' testimony is supported by the squad video.

Malmquist does not refute any of these assertions, but argues that the investigation was inordinately long, with the deputies "needlessly keeping" him in "bitterly cold weather for an excessive amount of time" without suitable clothing.  While Malmquist testified that he was outside for "a little over an hour," the district court rejected this contention, finding, upon reviewing the video of the incident, that Malmquist was arrested approximately 20 minutes into the encounter.  Moreover, the district court found that the video shows that after his field sobriety and preliminary breath tests, Malmquist admitted to the presence of drugs in the truck after only a couple of minutes of questioning by Deputy Hudson.  The district court also found that the video shows Malmquist wearing appropriate winter clothing in the form of a winter jacket.  Based upon this record and our review of the video and audio, the district court properly determined that Malmquist's incriminating statements were not coerced or given under duress.

The district court concluded that "[Malmquist's] voluntary responses to questions provided deputies with probable cause to search [Malmquist's] truck for drugs and paraphernalia."  Malmquist contends that the district court erred in holding that the deputies had probable cause to search his vehicle.

Relying on Malmquist's statements as creating probable cause, Deputy Schutz searched Malmquist's vehicle.  After an approximate three-minute search, Deputy Schutz located a hard plastic cigarette case containing straws and two baggies containing a

8

crystal-like substance appearing to be methamphetamine. The district court found that the video showed Deputy Schutz returning after about three minutes to the front area of the squad, where Deputy Hudson and Malmquist had been standing and talking and, approximately 20 minutes into the encounter, Malmquist was arrested for possession of drugs and drug paraphernalia.

Warrantless searches are per se unreasonable, subject only to a few established exceptions. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009). "Due to the exigent circumstances presented by automobiles, there is a well-established exception to the search warrant requirement for cases involving transportation of contraband goods in motor vehicles." *State v. Burbach*, 706 N.W.2d 484, 488 (Minn. 2005) (quotation omitted). Under the automobile exception, police may conduct a warrantless search when they have probable cause to believe that the vehicle contains contraband. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007). "Probable cause is a practical, common sense decision whether, given all the circumstances set forth . . . [,] there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Demry*, 605 N.W.2d 106, 108 (Minn. App. 2000) (quotation omitted), *review denied* (Minn. Mar. 28, 2000).

Here, the totality of the circumstances indicates that the deputies had probable cause to search Malmquist's vehicle for drugs. Malmquist admitted to snorting drugs the previous evening and, when asked whether there were drugs in his vehicle, answered evasively before eventually admitting to the presence of drugs and directing the deputies to them. Malmquist's response to the deputies' questions, coupled with the

9

circumstances of his accident, his bloodshot eyes, his slurred speech, and his poor performance on the field sobriety tests, establishes that the deputies had probable cause to search Malmquist's vehicle for drugs under the automobile exception to the warrant requirement. Because the deputies did not unlawfully expand the scope of the stop, Malmquist's statements were not coerced, and probable cause existed to search Malmquist's vehicle, the district court did not err in denying the motion to suppress the evidence found in Malmquist's vehicle.

**Affirmed.**