**Wendy Jean RENNER,
Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

No. C1-84-2249.

Court of Appeals of Minnesota.

Sept. 3, 1985.

Tristam O. Hage, Hage & Mitchell, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and LESLIE, JJ.

## OPINION

POPOVICH, Chief Judge.

Appellant appeals the trial court's order sustaining the revocation of her driver's license. Appellant asserts the procedures used in collecting and analyzing appellant's urine sample did not insure a reliable urinalysis. We affirm.

## FACTS

Appellant was involved in a two car head-on collision at approximately 8:00 a.m. on July 15, 1984. When the state patrol arrived, they found appellant unconscious on the shoulder of the road. The trooper noticed the stale odor of alcohol on appellant's breath. Appellant was taken to the hospital.

When it was learned that one of the passengers in the other car was near death, the troopers decided to obtain a blood sample from appellant. Appellant's medical condition prevented the taking of a blood sample so the trooper decided to obtain a urine sample. The implied consent advisory was read to appellant while she was semi-conscious, and she did not respond when asked if she understood the advisory and would submit to testing.

Appellant was catheterized in the emergency room because the doctor wanted to determine if there was blood in her urine. A sterile catheter was inserted by a registered nurse. Appellant's urine was collected in a sterile drainage bag. An operating room technician removed 100 c.c.'s of urine from the drainage bag into another sterile container. Each of these items came as part of a prepackaged sterile catheter kit. The urine was then poured into the sample bottle from the trooper's urine

kit. The bottle was signed and labeled by the technician, placed in an envelope and sealed, and later mailed to the Bureau of Criminal Apprehension.

A urinalysis was conducted at the BCA using the standard gas chromatograph procedure. The urine kit was still sealed when opened by the BCA lab technician, Paula Johnson. The analysis revealed results of .103 and .104 blood alcohol concentration. Johnson's visual inspection of the urine did not disclose the presence of blood or other impurities. The gas chromatograph, which indicates the presence of a variety of substances, did not disclose the presence of any contaminates.

Appellant's driver's license was revoked. The revocation was sustained by the trial court.

## ISSUE

Were the procedures used in collecting and analyzing appellant's urine sample unreliable?

## ANALYSIS

■ 1. Appellant asserts the procedure used to collect her urine sample did not conform to those necessary to ensure a reliable test. Appellant claims (1) it was necessary to receive testimony from the nurse who inserted the catheter, (2) an IV tube delivering sugar water could have affected the test, (3) pouring the urine from the sterile container to the sample jar contravened a BCA instruction that transferring samples should be avoided, (4) the urine was never examined for blood, and (5) the sample bottle was not sealed properly.

The proponent of a chemical or scientific test must establish that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability.

*State v. Dille*, 258 N.W.2d 565, 567 (Minn. 1977). In this matter, the testimony indicated the procedures used were reliable. Testimony was taken from the operating

room technician who took the urine sample, from the trooper who sealed and mailed the sample, and from the BCA technician who did the testing. The urine was drawn using sterile equipment, and no impurities were observed or discovered in the urine. "[S]ufficient indicia of reliability in the testing process were present so as not to preclude admissibility on this ground." *Id.* at 568. Appellant's arguments are speculative. She did not introduce evidence that would sustain her allegations or contradict the test results. *See State, Department of Public Safety v. Habisch,* 313 N.W.2d 13, 16 (Minn.1981).

2. Appellant also asserts the Commissioner failed to establish an unbroken chain of custody between the taking of the urine and its testing by the BCA. Appellant claims (1) the urine sample was not sealed and (2) the urine sample could have been taken from someone else. The testimony on the record indicates the sample was placed in an envelope and sealed. The BCA technician testified the envelope was sealed when she received it. Appellant's claim the urine sample itself should have been separately sealed is without merit.

3. Appellant asserts the urine sample could have been taken from someone else because the name on the label was Wanda Renner and because the initial certificate of analysis reflects the name Wendy Benner, Driver's License No. B–560–870–385–610. The record indicates these discrepancies were typographical errors. No evidence indicates the sample in question was that of anyone besides appellant. (For example, appellant's driver's license number is R–560–870–385–610). The Commissioner is not required to prove a rigid chain of custody for test samples to show the test result is reliable by a fair preponderance of the evidence. *See Schram v. Commissioner of Public Safety,* 359 N.W.2d 632, 634 (Minn.Ct.App.1984).

### DECISION

The procedures used to gather and test appellant's urine were not unreliable. This matter is affirmed.

Affirmed.