**STATE of Minnesota, Respondent,**

v.

**John Thomas BELLIKKA, Appellant.**

No. C5–92–646.

Court of Appeals of Minnesota.

Oct. 20, 1992.

Review Denied Nov. 25, 1992.

John M. Stuart, State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., William F. Klumpp, Jr., Asst. Atty. Gen., St. Paul, Craig S. Nelson, Freeborn County Atty., Albert Lea, for respondent.

Considered and decided by DAVIES, P.J., and PARKER and SCHUMACHER, JJ.

OPINION

PARKER, Judge.

John Thomas Bellikka appeals from convictions for third-degree burglary and possession of burglary tools. He argues that the initial stop of his vehicle was not supported by reasonable, articulable suspicion, and therefore evidence obtained as a result of the stop should have been suppressed. He also contends the trial court abused discretion by admitting physical evidence for which a chain of custody had not been sufficiently established. We affirm the trial court.

FACTS

The burglar alarm at Donovan's Saddle Shop sounded at 2:39 a.m. on November 26, 1990. Austin police officer Matt Holten immediately responded to the call. As he was driving toward the Saddle Shop on County Road 46, a very short distance from the site of the suspected burglary, Officer Holten passed a pickup truck going in the opposite direction. It was the only other vehicle he had seen on the road at that late hour. Holten turned his squad car around in order to see the truck's license number. After he read the license, he realized that the truck belonged to John Bellikka. He had seen Bellikka driving around the city of Austin earlier that evening and knew from past experience that Bellikka had a criminal record for burglary offenses.

Holten directed Bellikka to pull over. As he approached the truck, he looked into the back of the pickup and saw a gray box sticking out of a duffle bag. He took Bellikka's driver's license and returned to his squad car to run a license check. In the meantime, other officers had arrived at the scene of the burglary. They discovered that a window in the store's rear door had been shattered and they found glass covering the floor inside. A drawer and several display case doors were found open. The store owner informed the officers that a gray cash box was missing.

Officer Holten received information about the burglary over his radio. When he discovered that a cash box was missing

from the store, he ordered Bellikka out of the truck and pat-searched him. A flashlight was found on Bellikka and removed. The officer placed Bellikka in the back of the squad car and then searched the cab of his truck. A crow bar, screwdriver and bolt cutter were found in the truck. The officer also crawled into the back of the truck and retrieved the duffle bag containing the gray box. He shook the gray box and determined that it contained money.

Bellikka's pickup was impounded and more thoroughly searched. A pair of blue jeans and a pair of gloves, both with the price tags still attached, were found in the back of the truck. The Saddle Shop's manager identified the items as being identical to those sold in the store. During the booking procedure, Deputy Harig noticed glass fragments stuck in the soles of Bellikka's boots. Harig had Bellikka remove his clothing so that he could send it to the Bureau of Criminal Apprehension (BCA) for testing.

Laura Nelson, a forensic scientist at the BCA, found several glass fragments on Bellikka's clothing as well as on the bottom of his boots. Nelson compared the fragments to a known sample of glass taken from the store's floor by Deputy Harig. The known sample was heavier and thicker than normal window glass, and it had a wire criss-cross pattern running through it. Harig placed the clothing and the glass in separate containers, sealed them and sent them to the BCA with another police officer. Nelson received the evidence still sealed in the containers. After testing, Nelson concluded that the fragments on Bellikka's clothing were consistent with the glass taken from the scene of the burglary.

At the omnibus hearing, Bellikka moved to suppress evidence obtained as a result of the initial stop of his vehicle, claiming that the stop violated his constitutional rights. The trial court concluded that the officer was able to articulate sufficient reasons for the stop and denied the motion. The jury found Bellikka guilty of both charges, and he was sentenced to a 25–month prison term on the third-degree burglary charge.

Sentence was not imposed on the second charge.

## ISSUES

I. Was the investigative stop of Bellikka's vehicle supported by reasonable, articulable suspicion?

II. Was the physical evidence sufficiently authenticated to justify admission of an expert witness's testimony linking glass fragments found on Bellikka with glass found at the scene of the burglary?

## DISCUSSION

### I

■ Bellikka challenges the trial court's determination that the initial stop of his vehicle was valid. The test for determining the legality of a stop is whether the police had a particularized and objective basis for suspecting the person stopped of criminal activity. *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). The officer may make his assessment on all of the circumstances and may draw inferences and make deductions which might elude an untrained person. *Id.* at 418, 101 S.Ct. at 695; *Berge v. Commissioner of Pub. Safety*, 374 N.W.2d 730, 732 (Minn.1985).

Our supreme court has expressly discussed the situation involving the stop of a motor vehicle in the area of a recent crime. In *Appelgate v. Commissioner of Pub. Safety*, 402 N.W.2d 106 (Minn.1987), a police officer responded to a 2:25 a.m. call of a burglary in progress. The officer saw a single vehicle leaving the area. He followed the car for two blocks and then pulled the car over after watching it make prolonged stops at two intersections. The court held that police have some authority to freeze the scene even when the investigation is made without any description of a probable offender. *Id.* at 108–09. The court concluded that the officer in that case had a particularized and objective basis for at least suspecting that the driver of the vehicle had been involved in the burglary. *Id.* at 109.

The court applied the same reasoning in *State v. Moffatt*, 450 N.W.2d 116 (Minn. 1990). In that case, after a burglar alarm went off at 2:04 a.m. at a business, an officer responded to the call in minutes and drove to the scene of the burglary. The only car he saw on the way was a red Horizon driving along a residential street. The officer turned and stopped the car a mile from the scene. The court compared the facts to *Appelgate* and found that the initial stop was justified. *Id.* at 119.

■ We face similar facts in this case: It was 2:39 a.m. when the burglar alarm at Donovan's Saddle Shop sounded. Officer Holten immediately responded to the call by driving to the scene of the burglary. As the trial court noted in a well-reasoned memorandum, it is significant that Bellikka's vehicle was seen in proximity to the crime scene only minutes after the burglary report. He was traveling on the direct route back to Austin, where the officer knew Bellikka lived. In fact, the officer had seen him driving around Austin just three hours earlier. The dead of night, 2:39 a.m., is particularly important because Bellikka's vehicle was the only one seen by the officer en route to the scene of the alarm, and County Road 46 is a fast and direct route away from the Saddle Shop. Furthermore, the officer was aware that Bellikka had a criminal history of burglary offenses. Viewing the totality of these circumstances, we hold that the officer had a reasonable, articulable basis for suspecting that Bellikka was involved in a burglary and was well justified in making the investigative stop.

## II

Bellikka also objects to the testimony of Laura Nelson, the forensic scientist at the BCA, on the basis that references to the known glass sample should not have been allowed. He claims that the chain of custody of the physical evidence was not adequately established because two individuals who handled the evidence failed to testify in court.

■ The standard of review of the adequacy of foundation for the admission of evidence is whether an abuse of discretion is shown. *See State v. Williams*, 337 N.W.2d 689, 691 (Minn.1983). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Minn. R.Evid. 901(a).

■ The physical evidence before us is a large piece of glass described by both Harig and Nelson as having a wire criss-cross pattern running through its middle. Harig characterized the glass as being thicker and heavier than normal window glass, and Nelson said it had a green tint to it. These witnesses described the glass by referring to its unusual appearance and were able to identify it because of its peculiarity. It is important to point out that when the object of real evidence is unique and thus identifiable in court based on its distinctive appearance, a chain of custody is not needed. *See generally State v. Hager*, 325 N.W.2d 43 (Minn.1982) (discussing the authentication and identification of evidence for admissibility).

■ The purpose of establishing a "chain of custody" is to ensure that the evidence has not been contaminated or altered. *State v. Johnson*, 307 Minn. 501, 504, 239 N.W.2d 239, 242 (1976). The procedure is essential when common items such as drugs, blood and urine are involved. The process required for laying such a foundation may become lengthy when it demands the testimony of several witnesses. When the item is unusual enough to be recognized, the protection against tampering can be verified in a more efficient manner. Under those circumstances, it is sufficient to present evidence that the object is the same object and is in substantially the same condition. This type of evidence can usually be offered through the testimony of a witness who possesses personal knowledge of the object. *Hager*, 325 N.W.2d at 44 (quoting Michael H. Graham, *Evidence and Trial Advocacy Workshop: Relevance and Exclusion of Relevant Evidence—Real Evidence*, 18 Crim.L.Bull. 241, 243–46, 247 (1982)).

■ The glass in question was unusual enough to be recognized by Harig and Nelson. Therefore, a chain of custody was not required to authenticate the evidence. The witnesses both identified the glass in court and stated that it was in substantially the same condition. The requirement of authentication was satisfied and the evidence was admissible.

■ Even if the glass had not been identifiable by its distinctive appearance, the fact that everyone who handled the evidence did not testify is not fatal to establishment of a chain of custody. All possibility of alteration, substitution, or change of condition need not be eliminated in laying a chain of custody foundation. *Hager,* 325 N.W.2d at 44; *see also Berendes v. Commissioner of Pub. Safety,* 382 N.W.2d 888, 891 (Minn.App.1986) (chain of custody sufficient where it was established with reasonable probability that no tampering occurred); *Renner v. Commissioner of Pub. Safety,* 373 N.W.2d 628, 630 (Minn.App.1985) (same); *Schram v. Commissioner of Pub. Safety,* 359 N.W.2d 632, 634 (Minn.App.1984) (same). The glass and the clothing were sealed in separate containers, labeled and sent to the BCA together. The seals on the containers were still intact when Nelson received them. Bellikka has offered no evidence of tampering. He does not object to the authenticity of the clothing, which was transported to the BCA along with the glass. Based on the record before us, it is clear that appropriate cautionary measures were taken in handling the evidence. The trial court did not abuse discretion by admitting it.

## DECISION

We affirm the trial court's decision upholding the validity of the investigative stop. A chain of custody is not required to authenticate evidence that is identifiable based on its distinctive appearance. The expert testimony was properly admitted.

Affirmed.