**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0541**

State of Minnesota,
Appellant,

vs.

Bashir Abdullahi Farah,
Respondent.

**Filed September 29, 2014
Affirmed
Smith, Judge**

Freeborn County District Court
File No. 24-CR-13-649

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Craig S. Nelson, Freeborn County Attorney, David J. Walker, Assistant County Attorney, Albert Lea, Minnesota (for appellant)

Kelly Martinez, John Kaschins, Martinez and Kaschins, LLC, Minneapolis, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Smith, Judge.

## S Y L L A B U S

When a party gives proper notice of a motion to exclude evidence because the chain of custody is lacking, the district court, in its discretion, may determine the admissibility of the evidence prior to trial.

# OPINION

**SMITH**, Judge

We affirm the district court's pretrial order excluding controlled-substance evidence because the district court, concluding that appellant State of Minnesota had sufficient notice, did not err by making a chain-of-custody evidentiary ruling before trial and did not abuse its discretion by finding the evidence inadmissible.

## FACTS

On April 12, 2013, Agent Arnold Zuniga of the Freeborn County sheriff's office and the South Central Drug Investigation Unit learned that a confidential reliable informant could arrange for him to buy one ounce of cocaine for $1,000. Agent Zuniga executed the controlled buy, which involved respondent Bashir Abdullahi Farah. After the buy, Agent Zuniga reported that he had received a 5.5-gram package containing a "white powdery substance," which field tested positive for cocaine. In connection with the buy, Agent Zuniga secured three cell phones in an evidence locker.

On April 16, the state charged Farah with second-degree sale of a controlled substance; the state subsequently amended the complaint to include aiding and abetting second-degree sale of a controlled substance. Two days later, Agent Zuniga contacted the Bureau of Criminal Apprehension (BCA) and requested an analysis be completed on the "white powdery substance" seized during the controlled buy. The BCA received the evidence, noting that it was "classified as crystalline material." However, a BCA scientist subsequently crossed out the word "crystalline" and replaced it with the word "rock-like." In her case notes, the scientist described the evidence as approximately

4.869 grams of a "rock-like material/powder," divided between two corners of a plastic bag. After analyzing a sample of the evidence, the scientist concluded that the "rock-like material" contained cocaine. The evidence was returned to Agent Zuniga, who wrote that he placed the "rock-like material" in an evidence locker.

On December 9, Farah moved the district court to compel discovery. Among other things, Farah requested "the chain of custody reports related to any and all evidence obtained in this matter." At a hearing two days later, Farah's counsel clarified that she was requesting "the chain of evidence records and how the cocaine and the evidence that [the police] obtained in this case was handled while within the possession of" the police departments, stating that she "need[ed] to know what was done and how that evidence was handled prior to even getting to the BCA." The prosecutor stated that, in this case, the police do not have a "separate chain of custody report"; there is only "what officers do in their own reports to describe what has become of evidence."

On February 21, 2014, Farah moved the district court to exclude the controlled-substance evidence, arguing that:

> a. Chain of custody has not been preserved, and thus the State cannot establish that it maintained possession of the controlled substances from the time of seizure to the time of trial.
>
> b. The State has indicated that there is no chain of custody records/reports/data regarding the controlled substances except what is contained within the police reports.
>
> c. Other records contained within the discovery may indicate information relating to said controlled substances are unreliable.

3

On March 6, the district court convened a hearing on the motion. Farah's counsel opened by stating that Farah was "asking that the drugs in this case be excluded from evidence on the basis that the stuff that the BCA processed was not what was obtained in the" April 12 controlled buy, and "the state cannot prove that the substance obtained by [Farah] is the same as the substance tested by the BCA." Subsequently, Farah's counsel stated that the issue was whether "what was obtained from the seiz[ure] is the same thing that went to the BCA." The prosecutor characterized Farah's challenge as a probable-cause challenge, insisting that chain of custody "is a fact question for the jury to decide." The district court responded that an "evidentiary question is not quite the same as a probable cause question," noting that the district court must rule to admit evidence before the evidence can present a factual question for the jury. The district court explained that it was "approaching this as an evidentiary issue," and it would admit the evidence for trial only if the state sufficiently authenticated it prior to trial. The district court granted the prosecutor a continuance to call a witness regarding the chain of custody.

The hearing continued on March 11. The prosecutor did not call a witness and, citing this court's unpublished opinion in *State v. Boyles*,[1] iterated his position "that this is essentially a probable cause challenge." The prosecutor began an offer of proof, stating, in part, "Deputy Zuniga took that bag . . . containing powder. He sent that to the BCA after field testing it himself. He did not open that baggie or untie that knot. He simply sent it to the—had it sent to the BCA." The district court stated that it "asked for

---

[1] *State v. Boyles*, No. C5-92-2039, 1993 WL 129663 (Minn. App. Apr. 27, 1993), *review denied* (Minn. June 22, 1993).

4

witnesses, not proffers." After hearing argument from both parties, the district court took the matter under advisement.[2] On March 20, the district court granted Farah's motion to exclude the controlled-substance evidence.

## ISSUE

May a district court make a chain-of-custody determination prior to trial?

## ANALYSIS

The state first challenges the district court's pretrial decision to rule on the admissibility of the evidence. On this point, the state advances two arguments: (1) the district court was required to wait until trial to make its evidentiary ruling and (2) the evidentiary ruling was for the jury to make, not the district court. Both arguments are without merit.

"[A]uthentication or identification" of evidence is "a condition precedent to admissibility." Minn. R. Evid. 901(a). This requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* "[A]dmissibility must be left to the sound discretion of the trial judge," *State v. Johnson*, 307 Minn. 501, 504, 239 N.W.2d 239, 242 (1976), and the district court may make a "definitive ruling" to admit or exclude evidence "either at or before trial," Minn.

---

[2] During the hearing, Farah's counsel submitted into evidence two police policy manuals. The prosecutor did not object, stating, "[S]ince I think this is a probable cause challenge, I think the [district court] should consider everything." The prosecutor also stated, "I did not anticipate that [Farah's chain-of-custody argument] would include arguments about the content of a policy [] which [Farah's counsel] has obtained directly from the Sheriff's Department, which I don't have." However, the record establishes that, on March 5, Farah's counsel notified the prosecutor, in writing, that she intended to offer these manuals as exhibits.

R. Evid. 103(a).  *If* the district court determines that evidence is admissible, the credibility of the supporting proof may be challenged at trial and "[t]he trier of fact renders the ultimate decision as to whether the item of real evidence admitted in evidence is as it is purported to be."  *State v. Hager*, 325 N.W.2d 43, 44-45 (Minn. 1982) (quotation omitted).

To support its arguments, the state relies heavily on *Boyles*, 1993 WL 129663.  As an unpublished opinion of this court, *Boyles* is not precedential.  Minn. Stat. § 480A.08 (2012).  Accordingly, the state's position is not supported.  The district court did not err by making a pretrial ruling on Farah's evidentiary challenge because narrowing the issues for trial or alternatively eliminating the need for trial serves the interests of efficient judicial administration.

## II.

The state next challenges the district court's conclusion regarding the admissibility of the evidence.  As a threshold matter, we must determine the appropriate standard for our review.  When a pretrial order on a suppression motion turns on a legal determination, such as an alleged constitutional violation, we "may independently review the [undisputed] facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence."  *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999); *see also State v. Flermoen*, 785 N.W.2d 787, 789 (Minn. App. 2010).  However, when the order turns on the admissibility of evidence under the Minnesota Rules of Evidence—for example, a determination as to foundation or the chain of custody—the challenge relates to an evidentiary ruling.  *See Flermoen*, 785 N.W.2d at

6

791 n.3; *McDonald v. State*, 351 N.W.2d 658, 660 (Minn. App. 1984), *review denied* (Minn. Oct. 16, 1984). "Evidentiary rulings are within the discretion of the district court and will not be overturned absent an abuse of that discretion." *State v. Jenkins*, 782 N.W.2d 211, 224 (Minn. 2010); *see also McDonald*, 351 N.W.2d at 660 ("The standard of review of the adequacy of foundation for the admission of evidence is whether an abuse of discretion is shown."). Here, the district court excluded the evidence based on its conclusion that the state did not establish a sufficient chain of custody. Because this is an evidentiary ruling, the appropriate standard for appellate review is an abuse of discretion.

The "chain of custody" rule requires "the prosecution to account for the whereabouts of physical evidence connected with a crime from the time of its seizure to its offer at trial." *Johnson*, 307 Minn. at 504, 239 N.W.2d at 242. The rule does not create a "rigid formulation of what showing is necessary in order for a particular item of evidence to be admissible." *Id.* at 504, 239 N.W.2d at 242. Rather, it requires the district court to "be satisfied that, in all reasonable probability, the item offered is the same as the item seized and is substantially unchanged in condition." *Id.* at 505, 239 N.W.2d at 242; *see also* Minn. R. Evid. 901(a) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."). A chain-of-custody "procedure is essential when common items such as drugs . . . are involved." *State v. Bellikka*, 490 N.W.2d 660, 663 (Minn. App. 1992), *review denied* (Minn. Nov. 25, 1992). "All possibility of alteration, substitution, or change of condition need not be eliminated

7

in laying a chain-of-custody foundation," but "the more authentication is genuinely in issue, and the more susceptible the item is to alteration, substitution, or change of condition, the greater the need to negate such possibilities." *Hager*, 325 N.W.2d at 44 (quotations omitted).

Farah challenged the link in the chain of custody when Agent Zuniga allegedly possessed the evidence before it was sent to the BCA. The record establishes that, in this case, authentication was genuinely in issue. Police records consistently describe the seized evidence as a "white powdery substance." But the BCA's records repeatedly describe the analyzed evidence, which the state sought to admit, as a "rock-like material" or a "rock-like material/powder." When the BCA returned the analyzed evidence to Agent Zuniga, he too described the analyzed evidence as a "rock-like material." Additionally, although Agent Zuniga documented what he did with three cell phones seized in connection with the controlled buy, he did not document what he did with the seized evidence at issue. The state did not call Agent Zuniga to testify regarding this link in the chain of custody, and even in his offer of proof, the prosecutor faltered over whether Agent Zuniga personally sent the evidence to the BCA or whether he had someone else send the evidence to the BCA. On this record, the district court did not abuse its discretion by concluding that the state failed to establish "chain of custody sufficient to allow the controlled-substance evidence to be admitted at trial."

## III.

The state challenges the district court's conclusion that it "had adequate notice of [Farah's] evidentiary challenges and [Farah's] challenges were stated with sufficient

particularity." Based in part on this challenge, the state asks us to reverse the district court's order excluding the controlled-substance evidence and remand for a trial. The state's arguments are again without merit.

"[A] pretrial motion to suppress should specify, with as much particularity as is reasonable under the circumstances, the grounds advanced for suppression in order to give the state as much advance notice as possible as to the contentions it must be prepared to meet at the hearing." *State v. Needham* 488 N.W.2d 294, 296 (Minn. 1992). In *Needham*, defense counsel moved to suppress the defendant's confession under *Miranda*.[3] *Id.* at 295. After receiving testimony from the interrogating officer and the defendant, the district court directed the parties to file simultaneous omnibus hearing briefs. *Id.* at 295-96. In its brief, the state addressed the *Miranda* issues "on which defense counsel's questioning at the omnibus hearing had focused." *Id.* at 296. However, "[d]efense counsel raised, for the first time in his short letter brief," another specific challenge to the *Miranda* warning. *Id.* The district court "ruled against the defense on every issue except" the newly articulated challenge. *Id.* Concluding that the defense's challenge "was not clear to the prosecutor," and the state deserved "a full and fair opportunity to meet its burden," the supreme court remanded for a reopened omnibus hearing. *Id.* at 296-97.

First, *Needham* does not support the state's contention that lack of particularity in a motion to exclude evidence justifies remand for a trial that includes the previously excluded evidence. To the contrary, the state's relief under *Needham*, if any, would be a

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

reopened omnibus hearing to address the newly articulated ground for exclusion. Second, unlike in *Needham*, the state had ample notice here of the grounds advanced for exclusion. At a hearing in December 2013, Farah's counsel requested "the chain of evidence records and how the cocaine and the evidence that [the police] obtained in this case was handled while within the possession of" the police departments, stating that she "need[ed] to know what was done and how that evidence was handled prior to even getting to the BCA." In his subsequent exclusion motion, Farah challenged the chain of custody and, without explicitly stating the challenged link, flagged the lack of police reports. At the omnibus hearing on the motion, Farah's counsel stated that Farah was "asking that the drugs in this case be excluded from evidence on the basis that the stuff that the BCA processed was not what was obtained in the" April 12 controlled buy, asserted that "the state cannot prove that the substance obtained by [Farah] is the same as the substance tested by the BCA," and described the issue as whether "what was obtained from the seiz[ure] is the same thing that went to the BCA."

In the spirit of *Needham*, the district court granted the state a continuance to address Farah's motion. When the parties reconvened, however, the prosecutor inexplicably declined to present testimony on the challenged link. Particularly in light of this squandered opportunity, granting the state another chance to meet its burden of proof is not justified.

## D E C I S I O N

When a party gives proper notice of a motion to exclude evidence because chain of custody is lacking, the district court, in its discretion, may determine the admissibility of the evidence prior to trial.

**Affirmed.**