*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1245**


State of Minnesota,
Respondent,

vs.

Lisa Marie Schmidt,
Appellant.


**Filed June 6, 2016
Reversed
Bjorkman, Judge**


Jackson County District Court
File No. 32-CR-14-56

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Sherry E. Haley, Jackson County Attorney, Jackson, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Bjorkman, Judge; and

Toussaint, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant challenges her controlled-substance conviction, arguing that the drug evidence should have been suppressed because officers lacked reasonable, articulable suspicion to expand the scope of the traffic stop. We agree and reverse.

## FACTS

On May 15, 2014, at approximately 7:20 p.m., Deputy Curtis Kazemba of the Jackson County Sheriff's Office drove past a known drug house in Heron Lake. He observed a vehicle that belonged to appellant Lisa Marie Schmidt parked at the house. Ten minutes later, Deputy Kazemba saw Schmidt drive past his squad car. Deputy Kazemba knew that her driver's license had been revoked.

Deputy Kazemba initiated a traffic stop and asked Schmidt for her license; Schmidt stated she did not have it with her. He asked if she knew her license was revoked, and Schmidt said that she thought it was valid. Deputy Kazemba then inquired, "Is there anything in the car I need to know about, Lisa?" Schmidt responded, "No." He then asked, "Nothing illegal in here?" Schmidt again said, "No." Finally, he asked, "When's the last time you used? You're not under the influence of anything right now?" Schmidt replied, "No, last time would have been—well would have been September of 2013."

Deputy Kazemba returned to his squad car to write Schmidt a citation for driving after revocation. Schmidt remained in her vehicle. While preparing the citation, Deputy Kazemba saw Schmidt smoke two or three cigarettes, use her cell phone, and look back at his squad car several times. Approximately 23 minutes later (7:56 p.m.), Deputy Kazemba

2

returned to Schmidt's vehicle and gave her the citation. He told her that she was free to leave, but that her car had to remain at the scene because a canine unit was on the way to conduct a dog sniff. Schmidt asked if she could take her purse and other items with her. Deputy Kazemba allowed her to remove her pop and cell phone, but told her to leave everything else in the vehicle.

At approximately 8:22 p.m., Officer Chad Sanow arrived with his canine partner. The canine sniffed around the outside of the vehicle and alerted to the presence of drugs near the driver-side doors. Officer Sanow opened the driver's door, and the canine alerted on Schmidt's purse. Deputy Kazemba searched the purse and found a small digital scale with white residue on it, a socket used for smoking marijuana, and a dental-floss container holding two small bags of methamphetamine. Schmidt returned to the scene during the dog sniff and was arrested.

Schmidt was charged with one count of fifth-degree controlled-substance crime. She moved to suppress the evidence found during the search of her vehicle on the grounds that the officers unlawfully expanded the traffic stop without reasonable, articulable suspicion of criminal activity. Deputy Kazemba testified about his reasons for expanding the stop. First, he observed Schmidt's vehicle at what he described as a "drug house" ten minutes prior to the stop. Deputy Kazemba knew the residents of the house "have had charges for possession," but he was also aware that no drugs were found during a warranted search of the house. Second, Schmidt exhibited nervous behavior, which included smoking up to three cigarettes, looking back at his squad car, and using her cell phone during the 23 minutes he spent preparing the traffic citation. Deputy Kazemba described her behavior as

3

unlike what he sees during most traffic stops.  Finally, Deputy Kazemba knew Schmidt had a prior drug-related conviction[1] and had pending drug charges in Cottonwood County.

The district court denied Schmidt's motion, stating that each of the factors Deputy Kazemba identified, standing alone, would not create reasonable, articulable suspicion to expand the stop.  But the court concluded that the totality of the circumstances warranted the subsequent search of the vehicle.  Following a stipulated-evidence trial, the district court found Schmidt guilty as charged.  Schmidt appeals.

## D E C I S I O N

The United States and the Minnesota Constitutions prohibit "unreasonable searches and seizures."  U.S. Const. amend. IV; Minn. Const. art. 1, § 10.  A traffic stop constitutes a reasonable seizure if it is justified at its inception and the actions of the police during the stop are reasonably related to, and justified by, the circumstances that gave rise to the stop. *State v. Askerooth*, 681 N.W.2d 353, 364 (Minn. 2004).  A stop must last no longer than necessary to effectuate its purpose.  *State v. Syhavong*, 661 N.W.2d 278, 281 (Minn. App. 2003).  "An initially valid stop may become invalid if it becomes intolerable in its intensity or scope."  *Askerooth*, 681 N.W.2d at 364 (quotations omitted).

Expansion of a traffic stop beyond its original purpose is permissible if an officer has reasonable, articulable suspicion of other criminal activity.  *State v. Wiegand*, 645 N.W.2d 125, 135 (Minn. 2002).  An officer's suspicion cannot be based on a hunch; it must be objectively reasonable under the totality of the circumstances.  *State v. Smith*, 814

---

[1] Schmidt's prior offense resulted in a stay of adjudication pursuant to Minn. Stat. § 152.18 (2008).

4

N.W.2d 346, 351 (Minn. 2012).  In analyzing the totality of the circumstances, courts should consider "possible innocent explanations for the alleged suspicious activity."  *State v. Baumann*, 759 N.W.2d 237, 240 (Minn. App. 2009), *review denied* (Minn. Mar. 31, 2009).  Evidence discovered during an invalid search must be suppressed.  *Askerooth*, 681 N.W.2d at 370.

"When reviewing a pretrial order on a motion to suppress evidence, we may independently review the facts and determine whether, as a matter of law, the district court erred in suppressing or not suppressing the evidence."  *Id*. at 359.  We review the district court's factual findings for clear error, and its legal determinations de novo.  *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008).  When, as in this case, the underlying facts are not disputed, we review the denial of a motion to suppress evidence de novo.  *Id*.

Schmidt does not challenge the initial traffic stop, but argues that Deputy Kazemba unlawfully expanded it by questioning her about the presence of illegal drugs and subjecting her vehicle to a dog sniff.  Both of these expansions required reasonable, articulable suspicion of criminal activity apart from Schmidt's traffic offense.  *See Wiegand*, 645 N.W.2d at 137 (stating that law enforcement must have reasonable, articulable suspicion of drug-related criminal activity to conduct a dog sniff around a vehicle); *Syhavong*, 661 N.W.2d at 281-82 (holding that reasonable, articulable suspicion was required for questioning about contraband not related to the justification for the initial stop).  The state asserts that the totality of the circumstances, including Deputy Kazemba's observation of Schmidt's vehicle parked at a known drug house, her nervous behavior, and

his knowledge of her involvement in other drug offenses, warranted expansion of the stop. We consider each factor and the totality of the circumstances in turn.

**Location Prior to Stop**

In *State v. Miller*, we considered whether expansion of a traffic stop to include a dog sniff of the vehicle was warranted where the passenger had just left a known drug house, was incoherent, did not respond to questioning, and had glassy eyes. 659 N.W.2d 275, 279 (Minn. App. 2003), *review denied* (Minn. July 15, 2003). We first noted that the equipment violation that prompted the stop did not justify the dog sniff. *Id*. at 278. We next considered whether Miller's connection to what the officers characterized as a "known drug house" created reasonable suspicion of additional criminal activity. *Id*. at 279. As in the present case, the house did not harbor any controlled substances when previously searched pursuant to a warrant. *Id*. And the officers did not see Miller enter the house or receive anything from its residents. *Id*. In concluding that Miller's prior location did not justify expanding the traffic stop, we noted that "speaking with and being in close proximity with others suspected of criminal activity, without more, may be insufficient . . . to reach the threshold of reasonable articulable suspicion." *Id.* (quoting *State v. Ingram*, 570 N.W.2d 173, 177 (Minn. App. 1997), *review denied* (Minn. Dec. 22, 1997)).

As in *Miller*, Deputy Kazemba's testimony that Schmidt's vehicle was parked at a "drug house" is undermined by his awareness that the house was searched on one occasion and no drugs were found. And while he testified that residents at the house "have had charges for possession," he did not see Schmidt interact with those individuals or anyone else at that residence that day. On this undisputed record, we conclude that the location of

6

Schmidt's car prior to the stop did not create reasonable suspicion of drug-related activity to justify expanding the traffic stop.

**Behavior During Stop**

While an individual's nervousness may contribute to an officer's reasonable suspicion of criminal activity, it is not sufficient to expand a traffic stop. *Syhavong*, 661 N.W.2d at 282 (stating that nervousness must be combined with other particularized and objective facts to support expansion of a stop). In *Wiegand*, our supreme court considered whether an officer had a valid basis to expand a stop because the driver spoke quietly, acted nervous, was shaking, and had glossy eyes. 645 N.W.2d at 128. After stopping Wiegand's vehicle for an equipment violation, the officer asked if there were narcotics in the vehicle; Wiegand responded that there were not. *Id*. The officer nonetheless conducted a dog sniff around the outside of the vehicle, and drugs were discovered. *Id*. at 129. The supreme court held that the officer did not have a reasonable, articulable ground to expand the stop. *Id*. at 137. In the absence of evidence that Wiegand was under the influence of anything or engaged in drug-related activity, Wiegand's nervous behavior did not support expanding the stop. *Id*.

In *State v. Burbach*, the driver was stopped for a speeding violation. 706 N.W.2d 484, 486 (Minn. 2005). The officer recognized Burbach's name and license-plate number from a tip concerning vehicles suspected to be transporting cocaine that he received from his sergeant a week or two earlier. *Id*. There was no evidence concerning the source or time frame in which police received the tip. *Id*. The officer described Burbach as significantly more nervous, fidgety, and talkative than a typical motorist, but she did not

7

exhibit signs of impairment. *Id.* The officer obtained Burbach's consent to search the car, where he found cocaine. *Id.* at 487. The supreme court held that her nervous behavior, the unsubstantiated tip, and speeding did not establish reasonable, articulable suspicion of drug-related activity to expand the traffic stop to a vehicle search. *Id.* at 490-91.

The state cites *Smith*, where a driver's violent shaking after being stopped for speeding justified expansion of the stop. 814 N.W.2d at 348-49. When the officer asked why he was shaking, Smith stated that he had an undiagnosed medical condition. *Id.* at 349. The officer then asked if there was anything illegal in the vehicle, and Smith directed him to a pistol near the center console. *Id.* On appeal from his conviction for possessing the pistol without a permit, Smith argued that the officer impermissibly expanded the stop by inquiring about illegal items. *Id.* at 351. The supreme court rejected this argument, noting that Smith's violent shaking was "much more pronounced" than the nervous behavior exhibited by the defendants in *Wiegand* and *Burbach*. *Id.* at 354. And, in combination with his evasive explanation for the shaking, the behavior provided officers with a reasonable, articulable suspicion of other illegal activity. *Id.*

Deputy Kazemba generally described Schmidt as more nervous than most drivers he stops for traffic violations. But the only specific behavior he identifies is Schmidt using her cell phone multiple times, smoking up to three cigarettes, and repeatedly looking back at his squad car during the 23 minutes he spent preparing her citation. We are not persuaded that this behavior—over a longer period of time than what is reasonably required to write a traffic citation—creates suspicion of criminal activity. Schmidt's behavior certainly does not rise to the level of violent shaking in *Smith*. And, as in *Wiegand* and *Burbach*, Deputy

8

Kazemba did not observe any indicia that Schmidt was under the influence of a controlled substance. The state urges us to distinguish *Burbach* based on Deputy Kazemba's testimony that Schmidt's nervous behavior was unusual compared to what he observes during other traffic stops. We are not persuaded; the supreme court rejected the same argument in *Burbach*. 706 N.W.2d at 490. In sum, we are not convinced that Schmidt's behavior during the stop created reasonable, articulable suspicion of criminal activity apart from the driving offense.

**Criminal History**

Reasonable suspicion of criminal activity may be supported by an officer's knowledge of an individual's criminal history that is similar to the offense that is under investigation. *See State v. Gilchrist*, 299 N.W.2d 913, 916 (Minn. 1980) (holding informant's tip that suspect may have been involved in recent homicide and possessed firearms and officer knowledge of suspect's criminal history of firearms-related offenses supported a *Terry* stop); *State v. Bellikka*, 490 N.W.2d 660, 663 (Minn. App. 1992) (holding police knowledge of a driver's history of burglary offenses strengthened officer's reasonable suspicion that he was involved in a recent burglary), *review denied* (Minn. Nov. 25, 1992); *State v. Munoz*, 385 N.W.2d 373, 376 (Minn. App. 1986) (holding officer's knowledge of driver's prior sale and use of drugs and felony convictions corroborated informant's tip to support warrantless search of vehicle).

In *Bellikka*, an officer responded to a 2:39 a.m. burglar alarm at a business. 490 N.W.2d at 661. When he was a short distance from the business, the officer passed the only other vehicle he had seen on the road. *Id*. After running its license-plate number, the

9

officer learned the vehicle belonged to Bellikka, whom he knew to be a convicted burglar. *Id.* The officer initiated a traffic stop, and ultimately found evidence related to the burglary. *Id.* at 661-62. This court concluded that Bellikka's history of burglary offenses, along with the facts that he was driving the only other vehicle in the area and was near the location of a recent burglary, supported the officer's reasonable suspicion that Bellikka was involved in the recent burglary. *Id.* at 663.

In contrast, the offense Deputy Kazemba was investigating when he stopped Schmidt—driving without a license—was unrelated to her drug-related offenses. Schmidt did not exhibit signs of impairment and denied using or possessing a controlled substance. Under these circumstances, Deputy Kazemba's questioning and search were based on a hunch, not reasonable suspicion of criminal activity. *See Syhavong*, 661 N.W.2d at 282 (stating that an officer's suspicion of criminal activity must be based on objective facts and may not be based upon a mere hunch). To hold otherwise would effectively allow officers to seize convicted felons at any time and for any reason. That cannot be the law.

**Totality of the Circumstances**

We agree with the district court's conclusion that "[t]aken individually, none of these factors constitutes reasonable suspicion sufficient for Deputy Kazemba to question [Schmidt] regarding the contents of her car and her drug use or to perform a search of that car using a drug dog." But we depart from the court's assessment that consideration of these factors as a whole supports reasonable suspicion of criminal activity. We conclude that when reviewed collectively, the location of Schmidt's vehicle before the stop,

10

Schmidt's nervous behavior, and her criminal history do not support a reasonable suspicion of drug-related activity.

As noted above, there is no evidence that drugs have ever been present in the known drug house where Schmidt's car was seen immediately prior to the stop, or that Schmidt interacted with any of its residents. Accordingly, the location of Schmidt's car prior to the stop contributed nothing to making Deputy Kazemba's suspicion of drug activity reasonable. Likewise, Schmidt's nervous behavior, demonstrated by her smoking, using her cell phone multiple times, and looking back at Deputy Kazemba during the stop, is explained by the length of the stop.[2] And even without this reasonable explanation, Schmidt's behavior does not rise to the level of "violent shaking" in *Smith*. In short, Schmidt's behavior during the stop also contributed nothing to the reasonableness of Deputy Kazemba's suspicion.

Because consideration of the first two factors together provides no reasonable support for Deputy Kazemba's subjective suspicion of drug-related activity, our totality-of-the-circumstances analysis ends there. On this undisputed record, we conclude that the officer's questions regarding the presence of drugs in Schmidt's vehicle and the subsequent search were based on a hunch, rather than reasonable, articulable suspicion of drug-related

---

[2] Approximately 23 minutes elapsed between Deputy Kazemba's first contact with Schmidt and his return to her vehicle. After he gave Schmidt her citation, another 27 minutes elapsed before Officer Sanow arrived with his canine partner to conduct the dog sniff. During this time, Schmidt was unable to use or access her vehicle and her purse. Such a lengthy detention was unreasonable considering the purpose of the stop was to investigate whether Schmidt was driving without a license, which Deputy Kazemba confirmed before he even initiated the stop.

11

criminal activity.  Because the expanded search was invalid in both its intensity and its

scope, the drug evidence recovered during the search must be suppressed.

**Reversed.**