*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0899**

State of Minnesota,
Respondent,

vs.

Ricky Donell Holifield,
Appellant.

**Filed December 27, 2016
Affirmed
Stauber, Judge**

Hennepin County District Court
File No. 27-CR-12-28869

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Mark D. Nyvold, Fridley, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

On appeal from his conviction of second-degree sale of drugs, and from the order denying his postconviction petition, following a stay and remand, appellant argues that the district court abused its discretion by (1) denying him an evidentiary hearing to show

that he received ineffective assistance of counsel due to his trial attorney's conflict of interest and (2) denying his chain-of-custody objection to the state's drug evidence. We affirm.

**FACTS**

In August 2012, Officer Jeffrey Werner conducted a narcotics investigation involving appellant Ricky Donell Holifield. As part of the investigation, Officer Werner obtained a warrant to search appellant. In an effort to execute the warrant, Officer Werner set up surveillance of an apartment located in Minneapolis. Officer Werner acted as the case agent during the surveillance, with officers from both the third and fourth precincts of Minneapolis reporting to him.

Throughout the surveillance, Officer Werner observed the location from an unmarked vehicle parked on the street in front of the apartment building. Sergeant Jeffrey Jindra also observed the location from an unmarked vehicle in the parking lot behind the building. Several other officers in both marked and unmarked vehicles were positioned nearby, and all of the officers were in radio communication with one another.

Shortly after midnight, Sergeant Jindra observed appellant drive into the parking lot and park two spaces away from him. An unknown male then exited the apartment building and approached the passenger side of appellant's vehicle. The unknown male handed money to appellant who exchanged the money for a small item. Although the parking lot was well illuminated and he had an unobstructed view of the exchange, Sergeant Jindra was unable to specifically identify the object exchanged. But based on his 30 years of

2

experience as a police officer, Sergeant Jindra testified that the exchange "looked like a hand-to-hand narcotics transaction."

Sergeant Jindra notified Officer Werner of his observation, which prompted the other squads to be ordered "to come in and stop [appellant]." A "marked squad came up the alley from the south and pulled in . . . diagonally to [appellant's] car." The squad's emergency lights and spotlight were then turned on which "lit up the inside of [appellant's] car." When the squad illuminated appellant's vehicle, Sergeant Jindra observed appellant "throw something across his body towards the passenger seat floor." Sergeant Jindra broadcasted his observation and a subsequent search of appellant's vehicle revealed a bag containing "several smaller plastic baggies" of suspected cocaine located on the "front passenger floor." The substance was then weighed and tested, and was identified as 3.1 grams of cocaine. Appellant was subsequently charged with one count of second-degree sale of a controlled substance under Minn. Stat. § 152.022 (2012), and one count of third-degree possession of a controlled substance under Minn. Stat. § 152.023 (2012).

At trial, Officer Werner testified that, after the cocaine was recovered from appellant's vehicle, he took possession of the cocaine from Officer Carl White and put it in an evidence bag and labeled it. The state then moved to admit Exhibit 2, the suspected cocaine. Appellant vigorously objected, claiming an insufficient chain of custody. The district court "conditionally" accepted the exhibit in contemplation of the state's promise to "link up the chain of custody."

The state presented additional testimony that the evidence bag containing the cocaine was transported to the Third Precinct headquarters and placed in an evidence locker by

Officer White. An evidence technician documented his receipt of the evidence bag from the locker. Several months later, Officer David Menter transported the sealed evidence bag to the Minnesota Bureau of Criminal Apprehension (BCA), where it was received by forensic scientist Rebecca Willis. According to Willis, the evidence bag was assigned a "unique identifier" and barcode so that it could be tracked throughout the agency. Willis testified that she weighed and tested the cocaine, and then repackaged it for return to the third precinct. Willis further testified that as is standard BCA procedure, her analysis was subjected to a "peer review process" and was confirmed. The district court then admitted Exhibit 2 into evidence.

After the state rested, appellant waived his right to testify and called no witnesses. A jury found appellant guilty of the charged offenses, and the district court imposed a 108-month sentence.

In December 2015, this court granted appellant's motion to stay his direct appeal to allow appellant to pursue postconviction relief. Appellant subsequently filed a petition for postconviction relief claiming that he had received ineffective assistance of counsel due to a conflict of interest. Specifically, he claimed that his trial counsel failed to investigate his story that police planted the cocaine in his car in retaliation for his refusal to act as a confidential informant. Appellant argued that his trial counsel's desire to conceal his inadequate investigation created a conflict of interest that induced trial counsel to advise him not to testify. The district court summarily denied appellant's postconviction petition, and in June 2016, this court granted appellant's motion to reinstate his appeal.

4

**I.**

Appellant challenges the district court's summary denial of his petition for postconviction relief. This court reviews the "denial of a petition for postconviction relief, as well as a request for an evidentiary hearing, for an abuse of discretion." *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). In doing so, we review the postconviction court's underlying factual findings for clear error and its legal conclusions de novo. *Williams v. State*, 869 N.W.2d 316, 318 (Minn. 2015). A postconviction court may deny a petition for postconviction relief without holding an evidentiary hearing if the petition, files, and records in the proceeding conclusively establish that the petitioner is not entitled to relief. Minn. Stat. § 590.04, subd. 1 (2014).

A criminal defendant has the right to effective assistance of counsel; counsel is ineffective if (1) his or her performance is deficient and (2) the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In addition to assistance of counsel, a criminal defendant has a Sixth–Amendment "right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 1103 (1981); *State v. Patterson*, 812 N.W.2d 106, 112 (Minn. 2012). "The burden of a defendant claiming ineffective assistance due to a conflict of interest depends on whether and to what extent the alleged conflict was brought to the [district] court's attention." *Cooper v. State*, 565 N.W.2d 27, 32 (Minn. App. 1997), *review denied* (Minn. Aug. 5, 1997). A defendant who did not object to the alleged conflict at trial "must demonstrate that defense counsel 'actively

5

represented conflicting interests' and this conflict 'adversely affected [the] lawyer's performance.'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348, 350, 100 S. Ct. 1708, 1718-19 (1980)). If a defendant establishes a conflict of interest, prejudice is "generally presumed." *State v. Paige*, 765 N.W.2d 134, 140 (Minn. App. 2009).

Appellant argues that he received ineffective assistance of counsel because his trial counsel failed to investigate his version of the events. According to appellant, several unnamed officers from the fourth precinct initially searched his car and found nothing. Appellant also claimed that the named officers from the third precinct who testified at trial planted the cocaine in his car in retaliation for appellant's refusal to work as a confidential informant for the third precinct. Appellant contends that his trial counsel's failure to investigate appellant's claim created a conflict of interest because it prompted trial counsel to advise appellant not to testify at trial in order to protect himself from either an ineffectiveness claim, a professional-responsibility complaint, or both.

Because he did not object at trial, appellant must show an actual conflict of interest and an adverse effect on his trial counsel's performance. *See Cooper*, 565 N.W.2d at 32. A conflict of interest arises if "there is a significant risk that the representation of [a client] will be materially limited . . . by a personal interest of the lawyer." Minn. R. Prof. Conduct 1.7(a)(2). A theoretical or potential conflict is not sufficient to mandate reversal; instead, there must be "an actual conflict of interest . . . that affected counsel's performance – as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171, 122 S. Ct. 1237, 1243 (2002) (emphasis omitted) (quotation omitted). "[U]ntil a defendant shows that his

6

counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler*, 446 U.S. at 350, 100 S. Ct. at 1719.

The alleged conflict in this case was appellant's trial counsel's inability to adequately represent appellant due to trial counsel's personal interest in concealing his alleged failure to investigate appellant's version of the events. But as the state points out, appellant is unable to demonstrate an actual conflict. Unlike the circumstances presented here, the *Cuyler* test for ineffective assistance of counsel has been applied only to conflict cases involving "multiple representation of codefendants or serial defendants." *See, e.g. Caban v. United States*, 281 F.3d 778, 781-82 (8th Cir. 2002) (describing the development of the *Cuyler* standard and other ineffective-assistance-of-counsel standards involving conflicts of interest). And as the supreme court recognized in *State v. Moore*, "The danger that a lawyer's interest in protecting that lawyer's professional reputation may create a conflict of interest is inherent in all attorney-client relationships. Absent evidence to the contrary, however, we must presume that a lawyer resolves those conflicts in favor of the client." 481 N.W.2d 355, 363 (Minn. 1992).

In *Moore*, the defendant's second trial was conducted by the same lawyer whose representation of defendant was deemed ineffective in the first trial. *Id.* at 362. The claimed conflict arose from the possibility that defense counsel was so preoccupied with not being labeled ineffective a second time that he bent over backwards to please the defendant and, in doing so, abdicated his professional responsibilities and compromised his judgment. *Id.* In addressing the defendant's claim, the supreme court stated, "We are

7

unaware of any cases where courts have found that a lawyer's concern for his or her professional reputation has been deemed a conflict with the client's interest in a zealous defense." *Id.* at 363. The court held that "[w]ithout proof that counsel actually did breach his duty of loyalty to the client and let his personal desire to avoid being labeled ineffective a second time override his professional judgment, we are unwilling to presume that such a conflict exists." *Id.*

Appellant argues that his allegations that trial counsel failed to investigate appellant's version of the events is proof of an actual conflict, and at the very least, is sufficient to warrant an evidentiary hearing. To support his claim, appellant cites *State v. Nicks*, in which the defendant was convicted of first-degree murder. 831 N.W.2d 493, 496 (Minn. 2013). A key piece of evidence was that the defendant had threatened the victim in a phone call on the night of the murder. *Id.* Defendant's trial counsel requested cell phone records, but failed to correctly read or understand the cell phone provider's response. *Id.* at 505-07. Without evidence of cell phone records, counsel still argued at trial that the calls never took place. *Id.* The supreme court concluded that the defendant had proven ineffective assistance of counsel by a fair preponderance of the evidence and was entitled to an evidentiary hearing. *Id.* at 504, 508. The supreme court distinguished other trial strategy cases as follows: "Unlike the cases where trial counsel has considered possible strategies and rejected them, it appears that the cell [] phone-record evidence was not obtained because trial counsel did not follow up on information received and did not perform the necessary steps to successfully execute on his main theory of the case."

8

*Id.* at 507.  Thus, in *Nicks*, the trial counsel received evidence, but failed to analyze it correctly.

Here, in contrast to *Nicks*, appellant failed to allege any facts suggesting that trial counsel decided to pursue appellant's theory of the case but did not execute on that decision.  Instead, the record reflects that trial counsel decided to attack the credibility of the reporting and testifying officers, emphasizing their lack of memory of the incident, their allegedly sloppy handling of the evidence, their failure to document or forensically confirm the connection of the seized cocaine to appellant, and their failure to investigate the third party who engaged in the alleged narcotics transaction.  This strategy avoided the need for appellant to testify, which was significant considering appellant's prior conviction of fifth-degree controlled substance crime.[1]  Thus, even when appellant's allegations are viewed in the light most favorable to him, trial counsel's failure to investigate appellant's claims was nothing more than an unreviewable strategic decision. *See Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004) ("We are in no position to second-guess counsel's decision to focus his strategy on other defenses instead of investigating other suspects."); *see also State v. Jones*, 392 N.W.2d 224, 236 (Minn. 1986) (considering the extent of counsel's investigation as trial strategy).  And because appellant only presented evidence demonstrating that trial counsel's failure to investigate appellant's version of the events was a strategic decision, appellant is unable to establish an actual conflict for purposes of establishing ineffective assistance of counsel. *See*

---

[1] Although the district court ruled that appellant's prior conviction was inadmissible, appellant's testimony at trial could have opened the door to admission of that evidence.

9

*Cuyler*, 446 U.S. at 350, 100 S. Ct. at 1719 ("[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.").

In sum, the evidence in the record conclusively establishes that the decision by appellant's trial counsel not to investigate appellant's version of the events was unreviewable trial strategy. Because trial counsel's decision not to investigate was a matter of trial strategy, no actual conflict of interest was created by his decision. And because appellant is unable to establish an actual conflict of interest, his ineffective-assistance-of-counsel claim fails. The district court did not err by summarily denying appellant's petition for postconviction relief.

## II.

Appellant also challenges the district court's admission of Exhibit 2 over his chain-of-custody objection. A determination as to foundation or the chain of custody relates to an evidentiary ruling. *State v. Farah*, 855 N.W.2d 317, 321 (Minn. App. 2014), *review denied* (Minn. Dec. 30, 2014). "Evidentiary rulings are within the discretion of the district court and will not be overturned absent an abuse of that discretion." *State v. Jenkins*, 782 N.W.2d 211, 224 (Minn. 2010); *see also McDonald v. State*, 351 N.W.2d 658, 660 (Minn. App. 1984), *review denied* (Minn. Oct. 16, 1984) ("The standard of review of the adequacy of foundation for the admission of evidence is whether an abuse of discretion is shown.").

The "chain of custody" rule requires "the prosecution to account for the whereabouts of physical evidence connected with a crime from the time of its seizure to

10

its offer at trial." *State v. Johnson*, 307 Minn. 501, 504, 239 N.W.2d 239, 242 (1976). A chain-of-custody "procedure is essential when common items such as drugs . . . are involved." *State v. Bellikka*, 490 N.W.2d 660, 663 (Minn. App. 1992), *review denied* (Minn. Nov. 25, 1992). "All possibility of alteration, substitution, or change of condition need not be eliminated in laying a chain-of-custody foundation," but "the more authentication is genuinely in issue, and the more susceptible the item is to alteration, substitution, or change of condition, the greater the need to negate such possibilities." *State v. Hager*, 325 N.W.2d 43, 44 (Minn. 1982) (quotations omitted). If the district court determines that evidence is admissible, the credibility of the supporting proof may be challenged at trial, and "[t]he trier of fact renders the ultimate decision as to whether the item of real evidence admitted in evidence is as it is purported to be." *Id.* at 44-45 (quotation omitted).

Here, in overruling appellant's chain-of-custody objection, the district court found that "[f]rom the testimony of the State's witnesses up to this point, I don't view that there's any sign that the drugs that are Exhibit 2 have been tampered with." The district court then concluded that the state "established enough foundation to admit Exhibit 2," and that "the weight to be given Exhibit 2 or how much weight to give it at all will be up to the jury."

Appellant argues that the district court "abused its discretion and denied [him] a fair trial when it denied his chain-of-custody objection to the state's drug evidence" because the state's "witnesses could not account for the location and security of that evidence for significant periods of time." But the chain-of-custody rule does not create a

11

"rigid formulation of what showing is necessary in order for a particular item of evidence to be admissible." *Johnson*, 307 Minn. at 504, 239 N.W.2d at 242. Rather, in order to warrant a reversal, appellant must show that the district court abused its discretion in concluding that it was "satisfied that, in all reasonable probability, the item offered is the same as the item seized and is substantially unchanged in condition." *Id.* at 505, 239 N.W.2d at 242; *see also* Minn. R. Evid. 901(a) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.").

The record reflects that Officer White and Sergeant Jindra searched appellant's vehicle and Officer White recovered the cocaine from the passenger floorboards. Officer White then "turned [the cocaine] over to . . . Officer Werner," who put it in an evidence bag and labeled it. The record also reflects that Officer Jeffrey Imming weighed and "field tested" the narcotics, and Officer White ultimately transported the drugs from the Third Precinct office to the "evidence lockers" where he filled out a property sheet and put the sheet, along with the evidence, "into the locker [and] locked it." The next morning, the evidence technician documented his receipt of the evidence bag from the locker, and several months later, the evidence was transported to the BCA by Officer Menter where it was weighed and tested by Willis. This testimony accounts for the cocaine from the time of seizure to the time of trial, and there is no indication that the evidence was tampered with or that its condition was substantially changed. Therefore, the district court did not abuse its discretion by admitting the evidence.

**Affirmed.**

12